RAPE *v.* MOBILE & O. R. R. Co.*

(En Banc.   June 16, 1924.)

[100 So. 585.   No. 23592.]

CONTRACTS. *Master and servant. Contract for permanent employment held terminable at pleasure of either party.*

A contract for permanent employment so long as the work is satisfactorily performed, which is not supported by any consideration other than the obligation of service to be performed on the one hand and wages to be paid on the other, is terminable at the pleasure of either party.

ETHRIDGE, J., dissenting.

*Headnote 1.   Master and Servant, 26 Cyc, p. 981;   Contracts, 13 C. J., section 630.

APPEAL from circuit court of Monroe county.

HON. C. P. LONG, Judge.

Action by Charles C. Rape against the Mobile & Ohio Railroad Company. From a judgment for defendant, plaintiff appeals. Affirmed.

*McFarland & Holmes,* for appellant.

The courts have uniformly held that a contract of this character is not within the statute of frauds, since it may be fully performed within a year. *Jackson* v. *Illi-*

*nois Central Railroad Company,* 76 Miss. 607; *Edwards
& Son* v. *Favre,* 110 Miss. 864, at 870; *Haynes* v. *Atlanta
& Charlotte R. Co.,* 143 N. C. 55, 125 S. E. 447; Elliott
"Contracts," section 1285; *Ingram-Day Lumber Company* v. *Rodgers,* 105 Miss. 244; *Carnig* v. *Carr,* 35 L. R.
A. 512, and notes; *Sullivan* v. *Detroit Electric Railway
Co.,* 64 L. R. A. 673, and cases cited at the end of opinion.

"Permanent" employment, under some circumstances,
has been held to contemplate a continuous engagement,
to endure as long as the employer shall be engaged in
business and have work for the employee to do, and the
latter shall perform the services satisfactorily. 18 R. C.
L. 510, 64 L. R. A. 678, 35 L. R. A. 516. "Employee must
be ready, able and willing to perform such service as
the employer may demand of him." 35 L. R. A. 513,
and note. "No distinction between 'steady' and 'permanent' work and contract for life." 35 L. R. A. 517, and
note bottom second column.

The only question involved in this case, is: "Was
there mutuality in the contract? Or, to express it another
way, "Was there any consideration on the part of appellant for the agreement by appellee to give him permanent employment? Did appellant pay anything, or
give up anything, or suffer anything for his option to
work for appellee as long as he chose? Did any profit
or benefit accrue to appellee by reason of this contract?

What is meant by mutuality in a contract? The correct meaning is very clearly and lucidly announced in
6 R. C. L. 686, section 93. For a number of acts and
things that have been held to be sufficient considerations
by the courts, see 1 Elliott on Contracts, section 207; 13
C. J. 324, sections 162-3; 13 C. J. "Contracts," sections
150 to 170, inclusive; 6 R. C. L. "Contracts," sections 66
to 74 inclusive; 1 Elliott on Contracts, ch. 9.

In *Fontaine* v. *Boxley,* 90 Ga. 416, 17 S. E. 1015, it was
held that when one of the parties to a contract whereby
he was to go to New York and open up an office for the
sale of an article to be supplied him by the other party,

at a stipulated price, in such quantities as he might need to fill his contracts during the ensuing year, in pursuance of the agreement, went to New York and opened up the contemplated business, and thereby incurred expenses, this was a sufficient consideration to make the contract mutual and binding on both parties. To the same effect see *Emerson et al.* v. *Pacific Coast & Norway Packing Company,* 1 L. R. A. (N. S.) 445 and notes. See *Cox* v. *Baltimore & Ohio Railroad Company,* 50 L. R. A. (N. S.) 453, and notes.

There is a consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has the legal right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not. *Brown* v. *Taylor,* L. R. A. 1918B, 293; *Newhall* v. *Journal Printing Co.,* 20 L. R. A. (N. S.) 899, and notes; *Carnig* v. *Carr,* 35 L. R. A. 512, and notes; *School District of Kansas City* v. *Stocking,* 37 L. R. A. 406. See dissenting opinion in case of *St. L., I. M. & S. R. Co.* v. *Matthews,* 39 L. R. A. 467; Note to *Schoenman* v. *Whitt,* 19 L. R. A. (N. S.) 598; *Magee* v. *Catchings,* 33 Miss. 672; *Cox* v. *Baltimore & Ohio Railroad Co.,* 50 L. R. A. (N. S.) 453.

The nearest case in point that we have been able to find is *Marr* v. *Burlington, Cedar Rapids & Northern R. Co.,* 96 N. W. 716, mentioned in 13 C. J. 317, note 92. See, also, *L. & N. Railroad Company* v. *Offutt,* 15 Ky. 301.

By reason of this contract the railroad company was enabled to carry out its business as a public carrier and so comply with its duties to the public. This was a sufficient consideration, as appellant would not have entered into the contract unless it was to be permanent. Appellant gave up his work on the farm; suffered humiliation and abuse and possibly bodily harm at the hands of the strikers; incurred expense in moving his family to Okolona, and by his work under his contract aided the defendant in continuing its business; while

appellee was enabled to break the strike and received the profits from its business as a public carrier. In our opinion, this was a sufficient consideration and gave the contract mutuality and the case should be reversed.

*R. C. Beckett* and *J. M. Boone,* for appellee.

I. The reasonable interpretation of the intention of the parties as shown by the language of the witnesses and the circumstances is that the plaintiff would have a regular job with the railroad company such as was held by the strikers before they went on strike, with the usual rights of seniority, and this was merely an expression of intention on the part of the *railroad company* and not a promise made as part of a contract. *R. R. Co.* v. *Matthews,* 64 Ark. 398, 42 S. W. 902.

II. The offer by a railroad company of a "permanent job" does not mean a job for life (except under certain special circumstances, such as personal injury settlements), but merely that the job was not known at the time to be a temporary one or for any definite period. *L. & N. R. R. Co.* v. *Offutt,* 99 Ky. 427; 18 Ky. L. R. 303, 59 A. S. R. 36, S. W. 181; *McKelvy* v. *Choctaw Cotton Oil Co.,* 152 Pac. 414; *Lord* v. *Goldberg,* 81 Calif. 596, 15 A. S. R. 82; *Shuler* v. *Corl,* 178 Pac. 535; *Speeder Cycle Co.* v. *Teeters,* 18 Ind. App. 474, 48 N. E. 592; *Bentley* v. *Smith,* 3 Ga. App. 242, 59 S. E. 720; 18 R. C. L. 494, sec. 4; 18 R. C. L. 510, 511, sections 20 and 21.

III. A promise of a "permanent job," if construed to mean a job for life, where the worker does not make any promise as to the permanency of his work, is an option on the job and is unenforceable in law unless supported by an independent consideration. 18 R. C. L. 510, sec. 20.

IV. A unilateral contract is unenforceable in Mississippi. *Kolb* v. *Bennett Land Co.,* 74 Miss. 567.

*Wells, Stevens & Jones,* for appellant in reply.

The only point presented by this appeal is whether the plaintiff had an enforceable contract.

Granting for the sake of argument, that the plaintiff might have quit the job at will, nevertheless the contract of the railroad company was binding so long as the employee was ready, willing and able to perform the work contracted to be performed, and especially so long as the Mobile and Ohio Railroad Company was operating as a common carrier and in need of the services which the plaintiff was engaged to perform. We shall cite authorities expressly so holding. It is evident therefore that this case narrows down to the one single question as to whether the contract is unenforceable for want of an adequate consideration.

It is our contention that the contract is supported by valuable consideration for two reasons: First, the only consideration required as flowing from the employee is his services, and the consideration is services on the one hand, and monetary wages on the other. Secondly, in addition to the consideration which is presented in any ordinary contract of employment the record shows that the employee went to additional expense and incurred extraordinary risk on the one hand, and the railroad got relief at a time when a general strike was about to paralyze its operation, and at a time when its property was being endangered and its investments liable to become idle. So it is that there was not only a detriment and inconvenience and expense suffered on the part of the plaintiff, but an extraordinary advantage derived by the railroad company as a result of the contract of employment, and this, in itself, is sufficient to show the consideration, if indeed it be necessary to prove an additional consideration to that above referred to.

The court in substance ruled that this was a mere unilateral contract. For a discussion of unilateral contracts, see 1 Williston on Contracts, par. 13.

Again, it is not always necessary that there shall be mutuality in a contract in order that there may be a binding obligation on both parties. Williston, par. 140.

The contract here relied on is supported by a valuable consideration and is sufficiently definite to be enforceable. The leading American case on this subject is *Carnig* v. *Carr*, 35 L. R. A. 512, 57 A. S. R. 488. See *Carter White Lead Company* v. *Kimlin*, 47 Neb. 409; *Gulf, Colorado, & Sante Fe Railroad Company* v. *Jackson*, 29 Texas Civ. App. 342; *Newhall* v. *Journal Printing Company*, 105 Minn. 44, 117 N. W. 228, 20 L. R. A. (N. S.) 899, 18 R. C. L. 494; *Raphael* v. *Hartman*, 87 Ill. App. 634; *Butterick Publishing Company* v. *Whitcomb*, 225 Ind. 605, 80 N. E. 247, 8 L. R. A. (N. S.) 1004; *Pennsylvania Company* v. *Dolan* (Ind.), 51 A. S. R. 289; *Smith* v. *St. Paul and D. R. R. Co.*, 60 Minn. 330, 62 N. W. 392; *Hobbs* v. *Electric Light Co.*, 75 Mich. 550; Labatt on Master & Servant (2 Ed.), par. 92, page 335.

There is nothing in the record in the case at bar to indicate that Mr. Rape, the plaintiff, did not accept the permanent position, and obligate himself to remain with the M. & O. Railroad Company. It takes two to make a contract, and the acceptance of the contract of permanent employment by Mr. Rape, and the performance of his duties for approximately one month, and his insistence on being retained, show conclusively that he understood that he was bound by the agreement, and stood ready, willing, and able to perform.

There is nothing in the verbal contract as related by the witnesses to show that he was not bound on the doctrine of reciprocal obligations. He accepted the job. He entered upon the performance of the duties. He did not ask to be released, or give any intention of quitting. He protests at being fired, and sues for damages. His acceptance of the position was an implied obligation on his part to stay by the job so long as he was able to do so. *Cognlan* v. *Stetson*, 22 Blatch. 88, 19 Fed. 727; *Lee* v. *Hampton*, 79 Miss. 321. Our court is committed to

the doctrine that the acceptance of employment, and the entering upon a performance of the duties, is sufficient to bind the employer. *Smith* v. *Cauthen*, 98 Miss. 746; *Sunflower Bank* v. *Pitts*, 108 Miss. 380. There is no question here about the contract being against public policy. The decision of our court in *Jackson* v. *I. C. Railroad Co., supra* (76 Miss. 607), is authority on this point. So likewise is the decision of the Indiana supreme court in *Cox* v. *Baltimore & Ohio Southwestern Railroad Company,* 103 N. E. 337.; *Yellow Poplar Lumber Co.* v. *Rue,* 106 Ky. 455; *Sax* v. *Detroit G. H. & M. R. Co.,* (Mich.), 84 A. S. R. 572.

The binding obligation assumed by both parties to the contract is well illustrated by the case of *Fontaine* v. *Baxley,* 90 Ga. 416; *Emerson* v. *Pacific Coast & N. Packing Co.,* (Minn.), 1 L. R. A. (N. S.) 445; *Mueller* v. *Bethesda Mineral Springs Co.,* 88 Mich. 390; *L. & N. Railroad Co.* v. *Cox,* 145 Ky. 667.

The authorities hold the employer to the utmost good faith in discharging an employee, even where the right to discharge is retained in the contract. On this point there is a valuable note to the Michigan case of *Schmand* v. *Jandorf,* 44 L. R. A. (N. S.) 680.

Argued orally by *J. Morgan Stevens,* for appellant.

COOK, J., delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Monroe county, Miss., entered in pursuance of a peremptory instruction granted to the defendant at the close of the plaintiff's evidence.

The plaintiff's declaration alleged, in substance, that on September 9, 1922, the Mobile & Ohio Railroad Company, through its superintendent, J. G. Minniece, entered into a verbal contract with plaintiff at Okolona, Miss., whereby plaintiff was to work for said railroad company as a car repairer at Okolona, Miss., at the rate

of five dollars and four cents per day, or such sum as the United States Labor Board might thereafter allow, as the rate of pay for such work; that the contract of employment was to begin immediately, and that plaintiff was to have steady and permanent employment "as long as he was able and willing to perform such services properly;" that plaintiff immediately began work under this contract, and worked until October 24, 1922, at which time the defendant wrongfully, and without just cause or excuse, discharged said plaintiff, and thereby wrongfully breached said contract of employment; that since said discharge plaintiff had made diligent effort to find other work, but had only been able to find work at greatly reduced wages; "that the contract of employment was breached through no fault, refusal, or inability on plaintiff's part to perform the services which he had contracted with the defendant to perform;" "that, by reason of the contract made and entered into between him and the defendant railroad company as aforesaid, plaintiff went to great expense in moving to and establishing his family at Okolona, in order to carry out the said contract of employment with the defendant railroad company; and that after said contract of employment was wrongfully breached by the defendant railroad company plaintiff was unable to secure employment in Okolona, Miss., and, being at heavy expense living there, was forced to move from Okolona, incurring heavy additional expense, for all of which plaintiff is entitled to recover." For all the damages resulting from the alleged breach of contract plaintiff sued for the sum of three thousand dollars. To this declaration the defendant filed a plea of the general issue.

There were several similar suits filed by other workmen who were employed and discharged at the same time as the plaintiff in this suit, and all these cases were consolidated under an agreement that the judgment in the case at bar should control in all the cases, and testimony, was offered as to the contracts made with the

several plaintiffs, all of these contracts being practically identical.

The testimony shows that at the time the plaintiff applied to the defendant company for employment there was a strike among the employees of the company at Okolona and the company was greatly in need of car repairers to take the place of the strikers, and the contract of employment was stated by the plaintiff, Charles C. Rape, in the following language:

"I went down to the M. & O. Railroad Company and asked them for a job, and I went around and saw Mr. Minniece, and he said 'Yes.' He was superintendent of the M. & O. Railroad Company. I asked about a job, and he said, 'Yes; come back and go to work.' Well, he wanted me to go to work on the 7th, and then he said 'No; that would be a little too quick, because they were expecting a little trouble on the 8th; and so I went back on the 9th, taking myself and two brothers and a brother-in-law; and I asked Mr. Minniece, Will this be a permanent job, or will it just last while the strike was on? Are you going to kick us out and take them back? and he said, 'No; that is not the intent;' and he said, 'If you go to work you will have a permanent job, and you will have seniority over the others."

J. C. Whitesides, a Deputy United States Marshal, testified that he was present when the agreement was made, and that it was as follows:

"Mr. Rape asked Mr. Minniece if this job was to be permanent, or, if the men that were out on the strike were put back to work, would they be put out. He said, 'These men on the strike have no job; if they go back to work they will have to take what is left; your job is permanent if your work is satisfactory.'"

As to the contract with some of the other plaintiffs, he testified:

"They wanted to know if it was to be a permanent job or whether they would be relieved if the strikers went

back to work, and Mr. Minniece said if their work was satisfactory they would have a permanent job.''

The testimony of the other witnesses was to the same effect. The plaintiff, Charles C. Rape, testified that he expended the sum of fifteen dollars in moving to Okolona for the purpose of taking the job, and also expended the sum of fifteen dollars in moving away after he was discharged, but the declaration does not allege, and there was no testimony whatever to show, that the railroad company had any knowledge or notice of the fact that it would be necessary for him to incur any expense in accepting the employment, or that he had incurred any expense whatever in connection therewith, or that this fact entered into the contract in any way, and there was no testimony that any of the other plaintiffs incurred any expense in accepting the employment.

The appellant contends that this offer of permanent employment and the acceptance thereof by the appellant constituted a contract of employment for the life of the employee if the work was satisfactorily performed, and that it was binding on both parties, and, if not binding on the plaintiff, it was nevertheless binding upon the defendant railroad company so long as it was operated as a common carrier and had need of the services which the appellant had been engaged to perform, and so long as the appellant was ready, willing, and able to satisfactorily perform the work. In disposing of these contentions of the appellant the decisive question is whether the contract here relied on is supported by an adequate consideration, and is in other respects sufficiently definite to be enforceable.

The courts of the country are practically unanimous in holding that a contract by which a company, in consideration of the release of a claim against it for damages, agrees to give the claimant permanent employment, is enforceable, and that it is equivalent to life employment, or for such length of time as the employer has work which the employee can perform, and is able, ready, and

willing to perform, in a satisfactory manner. Such was the holding of this court in the case of *Jackson* v. *Railroad Company,* 76 Miss. 607, 24 So. 874, in which it was held that the release of a claim against the company for personal injuries sustained by the claimant was a sufficient consideration to support a contract for life employment, and that such a contract is not within the statute of frauds and is not against public policy. In the Jackson case, however, the court held that—

"In contracts for life employment, the employer would not be bound to retain in his service one who was unfaithful in performing his duties, or who was incapable of performing them, or if the employer had no work which the employee could perform."

A leading case upon this subject, and the one which is probably more frequently cited than any other, is the case of *Carnig* v. *Carr,* 167 Mass. 544, 46 N. E. 117, 57 Am. St. Rep. 488, 35 L. R. A. 512. In this case it was held that the contract for permanent employment there under consideration was supported by a valid and sufficient consideration, and was therefore enforceable; the court saying:

"There was evidence tending to show that the defendant agreed that, if the plaintiff would give up his business, which was that of an enameler, and enter his service in the same occupation, he would furnish him with permanent employment as stipulated wages; that the plaintiff gave up his business, and entered the defendant's employment and continued therein several months, receiving wages at the rate agreed, when the defendant suspended his employment, and finally ceased altogether to employ him, though he had work of the kind which the plaintiff was to do.

"The defendant contends that the contract is too indefinite to be capable of enforcement; that it is within the statute of frauds; that the plaintiff's agreement to give up his business was unlawful, and therefore the

contract is void for want of consideration; and that the action cannot be maintained on the declaration.

"To ascertain what the parties intended by 'permanent employment,' it is necessary to consider the circumstances surrounding the making of the contract, its subject, the situation and relation of the parties, and the sense in which, taking these things into account, the words would be commonly understood. For it fairly may be assumed that the parties used and understood them in that sense. *Schuylkill Navigation Co.* v. *Moore,* 2 Whart. 477, 491. Looking at the matter in that way, we think that the words would be commonly understood as meaning that, so long as the defendant was engaged in enameling and had work which the, plaintiff could do and desired to do, and so long as the plaintiff was able to do his work satisfactorily, the defendant would employ him, and that in that sense the employment would be permanent; that is, the plaintiff would be under no necessity of looking for work elsewhere, but could rely on the arrangement thus made. So construed, the contract would be capable of enforcement, and there would be no want of mutuality because the plaintiff might not have bound himself to continue in the defendant's employment. The construction contended for by the defendant, namely, that it was for him to say whether he needed the plaintiff's services or not, would put the plaintiff entirely at the defendant's mercy, and, in view of the fact that the plaintiff was to give up his business to enter the defendant's employment, would be such an agreement as he could not reasonably have been expected to make. See *Russell* v. *Allerton,* 108 N. Y. 288. On the other hand, it would be equally unreasonable to hold that the defendant could have intended to bind himself to employ the plaintiff so long as they both lived, regardless of his continuing in the enameling business, or of the plaintiff rendering satisfactory service. . . .

"The contract did not impose an unlimited restraint upon the plaintiff, but at most only restrained him from

engaging in business so long as he continued in the employment of the defendant. There was nothing unlawful or against public policy in such a contract."

In the case of *Echols* v. *Railroad Co.,* 52 Miss. 610, this court had under consideration an analogous question. In that case the railroad company had obligated itself to receive from the plaintiff cordwood of a certain specified quality and description, at a particular place and at a specified price, the deliveries "to commence on or before May 1, 1870, and continue as long as satisfaction be given by the contractors," settlement in full to be made at the end of each year. This contract was terminated by the railroad company before the end of the first year, and, on an appeal by the plaintiff from a judgment allowing damages as if upon an annual contract, the court had under consideration the contention that the contract was perpetual, and "without end of time;" and, while, in view of the fact that the railroad company did not appeal from the judgment which held it bound for twelve months, the court did not expressly decide whether the contract was terminable at pleasure or at the end of such period as would be deemed reasonable by the court, it did effectively dispose of the contention that the contract was one of perpetual duration in the following language:

"With regard to the theory of perpetual duration little need be said. Perpetual contracts of this character will not be tolerated by the law, or rather, will not be enforced as imposing an eternal and never-ending burden. An agreement to furnish a support or service, or a particular commodity, at a specified price, or to do a certain thing without specification as to time, will be construed either as terminable at pleasure, or as implying that the thing to be done shall be performed within a reasonable time, and the obligation will cease within the same limitation. Any other theory than this would subject incautious persons—a class, it may be remarked, which includes a majority of mankind—into lifelong servitudes, and greatly fetter and embarrass the commerce of the

world. Indeed, it may be said that any other theory is a moral and practical impossibility, and, if indulged in by the courts, could not be enforced in the ordinary concerns of life. . . .

"The contract in this case, then, was either terminable at pleasure or at the end of a period deemed reasonable by the court, in view of the nature of the contract itself. If terminable at pleasure, there is of course an end of the case, inasmuch as the corporation does not except to the construction which held it bound for twelve months, and has not appealed from the verdict rendered against it on that basis."

In the case of *Lord* v. *Goldberg,* 81 Cal. 596, 22 Pac. 1126, 15 Am. St. Rep. 82, the court said:

"Where an employer agrees that the employment shall be permanent as long as the employee desires to make it so, in consideration of the latter's using his best efforts to extend the business, such agreement does not mean that the employment shall be for life, or for any fixed or certain period, but only that it shall continue indefinitely, and until one or the other of the parties shall wish for some good reason to sever the relation."

Again, in the case of *McKelvy* v. *Choctaw Cotton Oil Co.,* 52 Okl. 81, 152 Pac. 414, the court said:

" 'Permanent employment' means employment for an indefinite period which may be severed by either party. Bouv. Law Dict. As a general rule the word 'permanent,' as applied to employment, is construed to mean that the employee shall retain the position only until one of the contracting parties shall elect to terminate it, and this election may be an arbitrary one without assigning any cause therefor. This construction is uniformly placed thereon, unless it appears that the contract was entered into with some valuable consideration as its basis, as where one agrees to give another permanent employment in settlement of a claim for personal injuries and like instances."

In the case of *Shuler* v. *Corl,* 39 Cal. App. 195, 178 Pac. 535, the court used the following language:

"Literally considered, "the plaintiff's employment under the contract, as she alleges it, was for life, unless she chose sooner to terminate it; the defendant had no option in that matter. Such contracts, where the engagement has been asserted to be that for 'permanent' employment, are held to mean that it is to continue so long as both parties agree and that either one may terminate it."

In 18 R. C. L., p. 509, it is said that, in case the employee purchases the employment with a valuable consideration outside the services which he renders from day to day, the established rule is that "permanent" employment will be held to contemplate a continuous engagement to endure as long as the employer shall be engaged in business and have work for the employee to do, and the latter shall perform the service satisfactorily; but in cases where no such independent consideration exists, this text in the same paragraph announces the rule as follows:

"In case the parties to a contract of service expressly agree that the employment shall be 'permanent,' the law implies, not that the engagement shall be continuous or for any definite period, but that, the term being indefinite, the hiring is merely at will. Accordingly, where an employer agrees that the employment shall be permanent as long as the employee desires to make it so, in consideration of the latter's using his best efforts to extend the business, it is held that such agreement does not mean that the employment shall be for life, or for any fixed or certain period, but only that it shall continue indefinitely, and until one or the other of the parties shall wish for some good reason to sever the relation."

It may be said to be the established rule that want of mutuality of obligation will not render a contract of employment unenforceable if it is supported by an independent consideration, that is, a consideration other than

the obligation of service to be performed on the one hand and wages to be paid on the other; but we think the correct rule deducible from the foregoing authorities, as well as many others, is that a contract for permanent employment which is not supported by such independent consideration is terminable at the pleasure of either party.

That no such independent consideration entered into the making of the contract here involved is clear. It is contended that the fact that one of the plaintiffs, the appellant, C. C. Rape, for his own convenience, expended a small sum in moving his family nearer to his work, constitutes a sufficient consideration to support the contract in his case; but, as before stated, there is no averment in the pleadings and no proof whatever that the railroad company had any knowledge or notice of the fact that it was necessary for the appellant to change his residence in order to accept the employment, or that any expense would be or had been incurred in so doing, and there is nothing in the record from which the conclusion or inference may be drawn that any such idea entered into the making of the contract. It is also contended in the briefs of counsel for the appellant that the appellant was subjected to ridicule and abuse, and possible danger of bodily injury, at the hands of the strikers and their friends, and that this fact constitutes a sufficient consideration to uphold the contract. While there is evidence that a strike was in progress among the employees of the company, there is not a word of evidence in the entire record to show that the appellant, or any other workmen, were subjected to the slightest danger, ridicule, or abuse from any one. The court below held that the appellant could not recover damages as for a wrongful discharge, and we think this judgment should be affirmed.

*Affirmed.*

ETHRIDGE, J. (dissenting).

I am unable to concur in the view that a contract made as the one in this case was made may be terminated at will by either party without legal liability for the breach of the contract. Of course I understand that in personal service contracts either party may terminate the contract at will subject to damages for the breach of the contract.

In the case of *Jackson* v. *Railroad,* 76 Miss. 607, 24 So. 874, this court held that a contract for permanent employment did not violate the statute of frauds for the reason that the contract might be performed within one year, and also held that a contract for permanent employment was not in violation of public policy. The contract there involved was an oral contract where the parties had entered into the performance of the contract, and, as pointed out in the majority opinion, the court held that a contract of that kind would not bind the employer to retain in his service one who was unfaithful in performing his duties or incapable of doing so, nor is the employer bound in case he has no work which the employee can perform. In that case the court approved the case of *Carnig* v. *Carr,* 167 Mass. 544, 46 N. E. 117, 57 Am. St. Rep. 488, 35 L. R. A. 512, in which it was held that a contract for permanent employment was good so long as the employer continued in his business and had work for the employee to perform, and as long as the employee was able and willing to perform the services in a satisfactory manner. This reasoning, being adopted by this court, and not having been since overruled, was the law at the time the contract was made and entered into, and became a part of the contract itself.

In the case of *Pierce* v. *Tennessee Coal, Iron & Railroad Co.,* 173 U. S. 1, 19 Sup. Ct. 335, 43 L. Ed. 591, the supreme court of the United States also approved the case of *Carnig* v. *Carr,* above cited. That court, in passing upon a contract similar to the one at bar, said:

"The only reasonable interpretation of this contract is that the defendant promised to pay the plaintiff wages at the rate of sixty-five dollars a month, and to allow him his fuel and the benefit of the garden so long as his disability to do full work continued, and that, in consideration of these promises of the defendant, the plaintiff agreed to do such work as he could, and to release the defendant from all liability upon his claim for damages for his personal injuries. An intention of the parties that, while the plaintiff absolutely released the defendant from that claim, the defendant might at its own will and pleasure cease to perform all the obligations which were the consideration of that release, finds no support in the terms of the contract, and is too unlikely to be presumed. *Carnig* v. *Carr*, 167 Mass. 544, 547, 46 N. E. 117.

"The supreme court of Alabama, when the case at bar was before it on appeal from the county court, and before the removal of the case into the circuit court of the United States, expressed the opinion that 'the contract is sufficiently definite as to time, and bound the defendant to its performance, so long as the plaintiff should be disabled by reason of the injuries he received, which, under the averment that he was permanently disabled, will be for life,' and upon that ground reversed the judgment of the county court sustaining the demurrer to the complaint, and remanded the case to that court. 110 Ala. 533, 536, 19 So. 23. As we concur in that opinion, it is unnecessary to consider how far it should be considered as binding upon us in this case."

In the case referred to, *Pierce* v. *Tennessee Coal, Iron & R. R. Co.*, 110 Ala. 533, 19 So. 22, the supreme court of Alabama considered the case under two aspects: First, because it was contended that the contract fixed no time of performance, and was determinable at the will of either party; and, second, because the contract shows it was not entered into by the defendant, but by the plaintiff and McCormack. The court then said:

"Noticing first the second proposition, simply remark that it is clearly without merit. The complaint avers that it was the contract of the defendant, duly entered into by it, and this averment the demurrer admits to be true. It was competent for the defendant to have McCormack to execute its written agreements on its behalf if it chose to do so; and in view of the express admission of the demurrer that such was the course pursued in this instance, we think it must be so accepted. As to the first proposition, our opinion is, without entering upon any discussion of the reasons which support it, that the contract is sufficiently definite as to time, and bound the defendant to its performance, so long as plaintiff should be disabled by reason of the injuries he received, which, under the averment that he was permanently disabled, will be for life. That contracts for the support or hire of one during his life are binding, and breaches thereof actionable, see *Trustees of Howard College* v. *Turner,* 71 Ala. 429, 434, and cases cited."

The majority opinion in the case before us quoted partially from section 20, 18 R. C. L., p. 509. This section also quotes the doctrine of *Carnig* v. *Carr,* supra, and authorities cited in the notes to the section show that there are two lines of authorities in the different states upon this proposition. As is shown, our state had already adopted the doctrine of the Carnig case, and in doing so necessarily repudiated the doctrine of the other cases cited in the majority opinion here to support its conclusion.

In 18 R. C. L., p. 510, section 21, it is said:

"The employer enjoys the absolute right of dismissing his employee without cause, though, of course, he subjects himself to liability in damages in case the dismissal is in violation of the contract of service. In America, at any rate, the employee is on a plane with the employer in this respect. Every workman may quit the service of his employer at will. This right cannot be abridged or taken away by any act of the legislature, nor is it subject to any

control by the courts, it being guaranteed to every person under the jurisdiction of our government by the Thirteenth Amendment to the federal Constitution, which declares that involuntary servitude, except as a punishment for crime, shall not exist within the United States or any place subject to their jurisdiction. Whether in any particular case the employee may be discharged without liability depends upon the express and implied terms of the contract.''

There is a great difference between this right to discharge an employee and the right to breach a contract for a definite time or for a time sufficient in law to bring a case within the rules of *Carnig* v. *Carr* and *Jackson* v. *Railroad, supra.*

In the case before us the contract should be considered in view of all of the evidence produced at the trial, and with the known conditions of business with reference to which the contract was made. In this case there was a strike among the employees of the railroad company. It was highly desirable from the railroad point of view for it to have employees who would perform its work and thus enable it to run its business as a common carrier. The plaintiffs were engaged in other occupations outside of the municipality where the railroad shops were, and the plaintiffs gave up their business, as the proof shows, and moved at an expense into the city to take employment, and the proof shows that after their discharge it was necessary to remove from the city in order to secure other employment, and the proof expressly shows that it required money to make these moves, and that this was known to the superintendent of the defendant. The contract expressly assured the plaintiffs that they would not be discharged when the strike was ended but that they would be given permanent employment with the right of seniority. The right of seniority as understood by the parties and by the general custom of common carriers in making contracts with their employees carries with it the right of the oldest employee in point of service to retain

his position so long as the carrier has work to be per-
formed, including the right to have all the employees sub-
sequently employed discharged first in case it is necessary
to discharge a portion of the employees of the railroad
company. This right is a valuable right, highly prized by
all of the employees of a common carrier and other large
industrial employers. Upon the faith of this assurance
the plaintiffs obtained their employment and entered the
employment of the railroad company. It is a notorious
fact that taking the place of strikers places an employee
in an unenviable position. He incurs the enmity of a large
number of his fellow workmen and of that part of the gen-
eral public who are in sympathy with the object and pur-
pose of the strike. It is frequently attended with danger
of physical violence, and this is so well known that no in-
telligent person could fail to appreciate the significance of
this fact. In so far as the consideration is concerned, the
giving up of employment at one place and moving to
another, and the actual entering upon a contract made, is
a sufficient consideration, and is beneficial to both parties
to the contract.

In the case before us the railroad company obtained the
services of men greatly needed and desired to carry on its
business in the situation in which it had found itself. The
laborers were benefited because they procured wages and
the assurance of contract right to a permanent employ-
ment with the rights of seniority which are highly desir-
able and valuable to all laboring men working for em-
ployers who employ large forces of men.

In *L. & N. R. R. Co.* v. *Cox,* 145 Ky. 667, 141 S. W. 389,
it was held that a contract to give a servant permanent
employment in a certain position means a contract to give
him the position as long as it exists and he is able to fill
it. At page 675 of the Kentucky Report of this case (141
S. W. 389, 392), the court quotes with approval *Pennsyl-
vania Co.* v. *Dolan,* 6 Ind. App. 109, 32 N. E. 802, 51 Am
St. Rep. 289, saying:

" 'Words are to be taken in their most usual and known
signification, but they get their meaning almost wholly

from the time, place, and circumstances under which they are used. The words 'steady and permanent' usually signify stability and duration, and this is especially true when they are applied to the subject-matter and the peculiar circumstances under which they are here used. We think, when reasonably construed, they show an agreement on the part of appellant to furnish appellee with employment as long as the latter is able, ready, and willing to perform such services as the company may have for him to perform.' "

In the case of *Derosia* v. *Ferland,* 83 Vt. 372, 76 Atl. 153, 28 L. R. A. (N. S.) 577, 138 Am. St. Rep. 1092, the court held that a master has the power to dismiss his servant without cause, but he subjects himself in so doing to the consequences of his contract, and that the servant in case of a wrongful discharge has a right to sue in damages for the whole damage resulting from such breach of the contract.

These principles seem so clear to me that it seems it would be unnecessary to cite authorities thereon.

In *Atlanta Stove Works* v. *Hamilton,* 83 Miss. 704, 35 So. 763, this court held that a discharge of an employee under a contract for a definite term must be in good faith because of dissatisfaction with his work, and not from caprice.

In the case of *Timberlake* v. *Thayer,* 71 Miss. 279, 14 So. 446, 24 L. R. A. 231, this court held that the obligation of a servant who had contracted for a fixed time obliged him to perform the full service, or in default he could not recover for the period of time that he actually served, showing conclusively to my mind that the servant is under legal obligation to discharge the contract. Of course he has a constitutional right to quit work and abandon the contract, but he cannot by abandoning it discharge himself from liability for a wrongful breach. There can be no such thing as breaching a legal contract by any person without legal cause without being liable to damage for so doing.

In *Prichard* v. *Martin*, 27 Miss. 305, it was held that, where an employee is prevented by his employer, without reasonable ground, from performing his contract, he may sue upon his contract and recover damages to the amount of the actual loss sustained.

The majority opinion in the case at bar cites *Echols* v. *N. O. J. & G. N. R. R. Co.*, 52 Miss. 610, as sustaining the conclusion of the majority opinion. This case does not sustain the contention of the majority opinion. In that case the contract was entered into to furnish articles and supplies at a specified price and without limit as to duration, and the trial court held that one year was a reasonable time, and that the contract expired at the end of one year, and the judgment was recovered for that part of a year which had not expired when the contract was breached. The case was decided and affirmed upon the theory that one year was a reasonable time, and that the contract, owing to its language, was terminable at the end of the year. It is true that the court in that case used the language set forth in the majority opinion in the case at bar. The court said, however, that it would be construed as either terminable at the pleasure of either party, or as implying that the thing to be done shall be performed within a reasonable time, and the obligation will cease within the same limitation. But the court did not decide that the contract was terminable at pleasure, and if it had so decided it would necessarily have been overruled by the pronouncement in the case of *Jackson* v. *Railroad*, 76 Miss. 607, 24 So. 874.

I realize that there are some authorities which support the majority opinion, but our court in the Jackson Case chose between the authorities, and adopted the view that such contracts were not contrary to public policy, and were not within the statute of frauds; and the interpretation as to the meaning of permanent employment pronounced by the case of *Carnig* v. *Carr*, 167 Mass. 544, 46 N. E. 117, 57 Am. St. Rep. 488, 35 L. R. A. 512 and notes, referred to in *Jackson* v. *Railroad, supra,* and the chang-

ing of the legal doctrine, in my opinion, has the effect of impairing the obligation of a contract perfectly valid when made. It is well settled that the decisions of the state in force when the contract was made is regarded as the law, and is entered into and becomes a part of the contract between the parties, and that a subsequent change of opinion by the court does not affect the legal right of the parties to the contract entered into under the first decision. *Ohio Life Ins. Co.* v. *Debolt,* 16 How. (U. S.) 416, 14, L. Ed. 997; *Douglass* v. *Pike County,* 101 U. S. 677, 25 L. Ed. 968; *Thomson* v. *Lee County,* 3 Wall. (U. S.) 327, 18 L. Ed. 177, and other authorities cited in 2 Lawyers' Co-operative Digest, "Constitutional Law," p. 1780.