**Bonnie OLIVER, Plaintiff,**

v.

**FORREST COUNTY GENERAL HOSPITAL, Defendant.**

**Civ. A. No. H89–0227(P).**

United States District Court, S.D. Mississippi, Hattiesburg Division.

April 9, 1991.

tal jurisdiction authorized under 28 U.S.C. § 1367 is unavailable.

Alison Steiner, Adelman & Steiner, P.A., Hattiesburg, Miss., for plaintiff.

J. Lawson Hester, Heidelberg, Sutherland & McKenzie, Hattiesburg, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This cause comes before the Court on the Defendant, Forrest County General Hospi-

tal's Motion to Dismiss, or in the Alternative, for Summary Judgment. Having reviewed the parties' briefs and authorities related to the motion, the Court finds as follows:

## I.

### FACTUAL BACKGROUND

Plaintiff Bonnie Oliver ("Oliver"), is an adult resident citizen of Forrest County, Mississippi. Defendant Forrest County General Hospital ("Forrest General") is a community hospital organized and operated under the laws of the State of Mississippi. Miss.Code Ann., § 41–13–1 *et seq.* (1972). Forrest General is located in Hattiesburg, Mississippi.

Oliver brings this action pursuant to 42 U.S.C. § 1983 and Mississippi common law. Thus, the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

In her Complaint, Oliver alleges that Forrest General violated her right to procedural due process under Section 1983 and that Forrest General breached an alleged contract of employment under Mississippi common law. Oliver seeks injunctive and monetary relief based upon these alleged violations of her rights.

Oliver was first employed by Forrest General from September 1975 through mid-January 1976. Oliver was re-employed by the hospital from October 1976 until February 1977. Thereafter, Oliver was again employed by the hospital in April 1979 and she took a leave of absence from November 1980 until June 1981. After her return to work, Oliver took another leave of absence in October 1986, which eventually became an extended educational leave of absence due to Oliver's enrollment in a graduate nursing program. While she was enrolled in this program, Oliver ceased her full-time employment at Forrest General but continued to work intermittently on an hourly basis at the hospital. Prior to October 6, 1986, Oliver had been employed as a licensed practical nurse ("LPN") in the post-partum department.

On or about March 15, 1988, Oliver requested re-employment on a full-time basis at Forrest General and at that time first requested to be placed in the labor and delivery department. At the time she began her graduate education, Oliver had indicated that she wished to work in the labor and delivery department upon completing her education as a Registered Nurse ("RN").

Ms. Oliver returned from her educational leave of absence to active employment with the hospital beginning on May 23, 1988. At that time, Oliver was placed as an RN in the Coronary Care Unit ("CCU") of Forrest General. Under the provisions of the employee handbook applicable to Forrest General employees, newly hired employees— including those previously employed by the hospital—must remain on probation for six months. *See* Exhibit A to Defendant's Motion at 4. During their probationary period, employees generally are not eligible for transfer to another department. *Id.* at 6.

However, Oliver requested to be transferred to the labor and delivery department during her six-month probationary period. By letter dated June 23, 1988, Ms. Oliver wrote Lowery Woodall, the Executive Director of Forrest General, requesting transfer to the labor and delivery department. Mr. Woodall responded by letter on August 23, 1988, indicating that he would ask that Oliver be considered for the next vacancy in the labor and delivery unit.

Sometime in November 1988, at which time she had not been transferred to labor and delivery, Oliver submitted a handwritten memorandum to Forrest General which reads as follows:

> Effective Nov. 8, 1988 I no longer wish to work in CCU but I would like to be transferred to Labor and Delivery if possible. If this is not possible then I will no longer be able to continue to work at FGH at this time.

Five RN's were hired in the labor and delivery unit in May 1988, despite Ms. Oliver's request to be placed in the labor and delivery unit upon her return to work. Moreover, another RN was hired in the labor and delivery unit on September 1, 1988, after Oliver's June 23, 1988 request for transfer was submitted and Mr. Woo-

dall responded in his letter of August 23, 1988. *See* Defendant's Response to Plaintiff's First Interrogatory No. 7. However, no RN positions for the employment of Oliver in the labor and delivery unit became available from November 8, 1988 through December 8, 1988, the effective date of Ms. Oliver's voluntary resignation from employment with Forrest General. Oliver ceased her employment with Forrest General on December 8, 1988, and brought this action one year later on December 8, 1989.

The employment relationship between Oliver and Forrest General was governed by the *Employee Handbook* promulgated by the hospital. The *Employee Handbook* plainly and unequivocally states: "The language in this handbook is not intended to create a contract between Forrest General Hospital and its employees." Exhibit A to Defendant's Motion at ii. The *Employee Handbook* further states that "the employment in this hospital is based on mutual consent, either the employee or the employer is privileged to terminate employment." *Id.* at 7.

## II.

### CONCLUSIONS OF LAW

Forrest General moves to dismiss Oliver's complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, alternatively, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Insofar as both Forrest General and Oliver have submitted matters outside the pleadings, the Court treats Forrest General's motion as a motion for summary judgment. Fed.R.Civ.P. 12(b).

■ The proper standard in considering a motion for summary judgment requires that the moving party establish that there exists "no genuine issue of material fact". Fed.R.Civ.P. 56(c). Summary judgment may be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ If the nonmoving party fails to make a sufficient showing on an element essential to its claim, "there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552. When faced with a motion for summary judgment, the opposing party may not rest upon the mere conclusory allegations of its complaint. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1195–1196 (5th Cir.1986). To the contrary, the party opposing summary judgment must produce sufficient evidence and "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *American Manufacturers Mutual Ins. Co. v. Cupstid,* 673 F.Supp. 186, 188 (S.D.Miss.1987). In the case *sub judice,* the Court finds that Oliver has failed to present sufficient evidence to convince the Court that there is a need for trial in this matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–252, 106 S.Ct. 2505, 2510–2512, 91 L.Ed.2d 202 (1986). Thus, Forrest General is entitled to summary judgment in its favor.

### A. Oliver's Section 1983 Claim

In her Complaint, Oliver alleges that the acts of Forrest General in failing to transfer her to the labor and delivery unit "constitute [a] violation ... of Plaintiff's right not to be deprived of property without due process as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution...." Complaint at ¶ 17.

■ To establish a violation under Section 1983, the Plaintiff must show that she has suffered deprivation of her rights, privileges, or immunities secured by Constitution and laws of the United States. 42 U.S.C. § 1983; *White v. Thomas,* 660 F.2d 680, 683 (5th Cir.1981). In this vein, it is important to remember that "Section 1983 neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the

**594**

complaints of all who suffer injury at the hands of the state or its officers." *White,* 660 F.2d at 683.

The threshold issue in any Section 1983 case is whether the plaintiff had a protected property or liberty interest. In short, the Court must "look to see if the interest is within the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). This inquiry determines, in effect, whether *any* process was due the plaintiff. In the absence of proof that the plaintiff had a protected property or liberty interest, the Court has no basis for reaching the "second step of the analysis [which] thus asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review." *Narumanchi v. Board of Trustees of Connecticut State University,* 850 F.2d 70, 72 (2nd Cir.1988) (*citing Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

In this connection, the Court notes that "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests *that a person has already acquired in specific benefits." Roth,* 408 U.S. at 576, 92 S.Ct. at 2708 (emphasis added). More importantly, to have a property right subject to protection, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. at 2709. Such claims of entitlement do not arise from nor are they created by the Constitution itself. Rather, they emanate from other sources, such as state law. *Id.; Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).

Oliver has failed to offer any proof that she had a protected property inter-est—arising under Mississippi law—in her continued employment with Forrest General. Therefore, Forrest General owed her no process prior to terminating her employment, if in fact there was a termination.[1] An analysis of controlling Mississippi law renders such a conclusion inescapable.

**B. Oliver's Breach of Contract Claim**

Oliver alleges that she had an enforceable contract of employment with Forrest General which was breached when Forrest General failed to place her into an available RN position which was filled in the labor and delivery unit on September 1, 1988. Oliver's breach of contract claim is founded solely upon the August 23, 1988 letter from Mr. Woodall, in which Woodall indicated that Oliver would be considered for the "next vacancy we have in the Labor and Delivery Unit." *See* Attachment to Affidavit of Bonnie Oliver.

This letter, Oliver says, created the entitlement which she seeks to protect from deprivation by this lawsuit. Additionally, Oliver contends that this letter compelled Forrest General to place her into the vacancy in the labor and delivery unit which was filled on September 1, 1988. The Court does not agree with Oliver's conclusory contention that Mr. Woodall's letter should be construed as a binding employment contract under Mississippi law. The Court also finds no basis whatsoever, considering only the language of Woodall's letter, for concluding that the August 23, 1988 letter served to waive and abrogate the terms of the *Employee Handbook,* which expressly disclaims any guarantee of employment and which further mandates a six-month probationary period before an employee may be transferred from one unit to another. While Oliver contends that there is a triable question of fact concerning the intended effect of the letter, the Court holds that Woodall's letter is insufficient, as a matter of law, to support a legitimate claim

---

1. While Oliver suggests that her employment was terminated, Forrest General maintains that she voluntarily quit her employment. The Court does not reach this specific issue based upon its finding that Oliver had no protected entitlement to further employment with Forrest General. In the absence of any entitlement to further employment, there could be no improper termination of employment. *Cf. Roth,* 408 U.S. at 578, 92 S.Ct. at 2709.

by Oliver of entitlement to further employment.

■ Mississippi still adheres to the often-criticized employment-at-will doctrine, which holds that "a contract of employment for an indefinite term may be terminated at the will of either party. The employee can quit at will; the employer can terminate at will." *Kelly v. Mississippi Valley Gas Co.*, 397 So.2d 874 (Miss.1981). Even assuming, as Oliver argues, that the August 23, 1988 letter from Mr. Woodall created a contract of employment, the absence of any term of duration in the alleged "contract" renders it terminable at will. *Rape v. Mobile and O.R.R. Co.*, 136 Miss. 38, 50, 100 So. 585, 587 (1924). This obviates any suggestion that Oliver had a protectable property interest in continued employment with Forrest General.

This is not a case where the hospital's employee handbook supplies the necessary "legitimate claim of entitlement to continued employment." *Conley v. Board of Trustees of Grenada County Hospital*, 707 F.2d 175, 180 (5th Cir.1983). To the contrary, Oliver concedes that the *Employee Handbook* in this case is "not sufficient to create such an entitlement." Plaintiff's Memo. at 10. Since Mississippi law "allows each hospital to make its own choice as to whether or not its employees will have a property interest in their continued employment," *Johnson v. Southwest Miss. Regional Medical Center*, 878 F.2d 856, 858 (5th Cir.1989), it appears that this Court is bound by Forrest General's election to make its employees terminable at will. The August 23, 1988 letter contains no term of duration nor any other indication that the letter was intended to create a binding contract of employment taking Oliver outside the operation of the employment-at-will rule. In short, since Oliver has "shown no basis for a valid claim of entitlement to continued employment ... her termination deprived her of no property interest the taking of which would invoke the due process provisions of the Constitu-

tion." *Harrison County School Board v. Morreale*, 538 So.2d 1196 (Miss.1989).

Oliver's Section 1983 due process claim stands or falls on the basis of her claim of entitlement (i.e., her property right) to continued employment arising under Mississippi law. Since she has shown no legitimate claim of entitlement to continued employment, her Section 1983 claim must fail along with her common law breach of contract claim. Forrest General is entitled to summary judgment on all claims set forth in Oliver's complaint.[2] For these reasons,

IT IS HEREBY ORDERED AND ADJUDGED that the Defendant Forrest County General Hospital's Motion to Dismiss, or, in the Alternative, for Summary Judgment, is sustained.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's Complaint is hereby dismissed with prejudice.

SO ORDERED AND ADJUDGED.

---

**2.** The Court notes that Oliver is seeking injunctive relief and damages for the alleged tort of intentional infliction of emotional distress. However, both claims are tied to her breach of contract claim, which the Court has ruled is without merit. Thus, the Court holds that these claims are also without merit and should be dismissed.