CHARLES D. MINTER, Appellant, v. TOOTLE, CAMPBELL DRY GOODS COMPANY, a Corporation, Respondent.

**Kansas City Court of Appeals, January 11, 1915.**

1. **CONTRACTS: Master and Servant: Hiring.** The plaintiff was employed by defendant from January 1, 1909, for a term, which he supposed to be permanent. Some two years later he was discharged and he now brings this action to recover his expenses and unpaid salary. *Held*, that, since the hiring of plaintiff was shown to be for an indefinite time, the court properly directed a verdict for defendant.

2. ——: **Actions: Recovery.** A party cannot sue on one contract and recover on another.

3. **DEFINITIONS: Indefinite Hiring.** An indefinite hiring at so much per day or per month, or per year, is a hiring at will and may be terminated by either party at any time, and no action can be sustained in such case for a wrongful discharge.

4. ——: **Permanent Hiring.** The word permanent as applied to an employment will be regarded as meaning nothing more than that an employee is to hold the position until one or the other of the contracting parties shall desire to terminate the connection; in which event the dissatisfied party is to have right to be relieved of further obligation to the other, upon fair and equitable terms and after reasonable notice. Such term is not to be understood in the sense that the parties are to be bound together by ties which can be dissolved only by mutual consent or for sufficient reasons.

Appeal from Buchanan Circuit Court.—*Hon. C. H. Mayer*, Judge.

AFFIRMED.

*Lawrence Bothwell* for appellant.

*Robert A. Brown* for respondent.

JOHNSON, J.—The petition in this case is in two counts. In the first plaintiff seeks to recover damages

for the alleged breach of a contract of employment and in the second, to recover money advanced by him at the request and for the benefit of defendant. At the close of plaintiff's evidence the court overruled a demurrer to the evidence on the first count and sustained a demurrer to the second and, thereafter, the trial proceeded on the issues raised by the first count and defendant's answer thereto. The verdict was for defendant and plaintiff appealed.

The petition alleges that in 1908 defendant, a wholesale dry goods merchant in St. Joseph, employed plaintiff at a salary of $1800 per year and expenses for a period to begin January 1, 1909, and to continue for and during the natural life of plaintiff who, at that time was fifty-two years of age, and that pursuant to this contract plaintiff entered into the service of defendant and continued therein until June 1, 1911, when, without cause, defendant discharged him. The language stating the contract of employment is that "defendant would give the plaintiff a permanent and lasting position, for and during his natural life." The petition closes with the allegations "that the defendant's action in discharging him was wrongful, unjustifiable, malicious and prompted by bad feeling and motives, and was a violation of the defendant's agreement to employ this plaintiff permanently and during his natural life, whereby the plaintiff alleges that he has been actually damaged in the sum of $1050, that being the remainder of the salary for the third year, to-wit: from June 1, 1911, to December 31, 1911, together with the further sum of $6348; that the plaintiff has been damaged and will be damaged from the 31st day of December, 1911, until the expiration of the said contract; and the plaintiff further alleges that on account of the malicious and aggravating character of his discharge, he asks a further sum of $1, as exemplary or punitive damages, for which sum of $7399,

the plaintiff asks judgment, together with the costs in this behalf expended.''

The court sustained a motion of defendant (plaintiff excepting) to strike out the item of $1050 damages for the loss of salary from June 1, to December 31, 1911, on the ground that under the allegation of an employment for life such item was not a proper element of the recoverable damages.

The answer admits plaintiff was employed by defendant, but alleges in substance that the employment was not for any definite period and that defendant had good cause for discharging plaintiff.

The contract upon which plaintiff relies is in letters exchanged between him and defendant in the latter part of 1908, during the period when defendant was preparing to embark in the wholesale dry goods business in St. Joseph. The principal officers of defendant corporation which had just been organized were drawn from established wholesale dry goods houses in St. Joseph and were confronted with the task of establishing a new business in a market adequately equipped to supply the trade. Plaintiff who, at the time, was residing and had business interests in the State of Washington, had been in the wholesale dry goods business in the territory defendant intended to cover, was well acquainted with the retail merchants, and was experienced and competent in procuring business. He was well known to the manager of defendant who desired to employ him as ''street man'' and manager of defendant's ''entertaining department.'' The duties of that position included meeting retail merchants who came to St. Joseph to buy dry goods, inducing them to call at defendant's house before making their purchases, and entertaining them while they remained in the city.

At the direction of T. B. Campbell, defendant's manager, the following letter was written plaintiff under date of May 22, 1908:

"The Tootle-Campbell Dry Goods Company has incorporated in this city and is composed of men of experience taken from the best houses here and in St. Louis and other good jobbing points. It is the intention and plan to make this business the largest and best, west of Chicago. The organization is practically complete at this time, but it has occurred to a number of us that perhaps you would be interested in joining the organization, and in looking after a position similar to the one you held in Kansas City, that is, in the hotel and entertainment departments. If you are not entirely satisfied with the western climate and western conditions and have any interest or desire to come to St. Joseph, won't you kindly write a letter to Mr. T. B. Campbell in care of the above firm in regard to this matter and you will have a prompt reply from him."

Plaintiff wrote to Mr. Campbell in reply asking for more definite information, and a correspondence followed in which plaintiff expressed a preference for a position as traveling salesman in the Puget Sound territory, as all his children were in Washington and he had moved to that State with the intention of making it his permanent home, and had acquired business interests there. Mr. Campbell, in a letter dated September 15, 1908, urged plaintiff to accept "the position to look after customers at the hotels" or what is commonly called "street work," saying: "In our judgment it is an important position and one that we know of no one that could fill better than yourself. You not only have a large acquaintance, but you also have the faculty of making friends with strangers, which is essential to success in this important position. It occurs to me that you always showed a fondness for this kind of work. If this appeals to you, please let me know if you would accept such a position with us and also what salary would induce you to come to St. Joseph and accept same? I suppose at your

age, you want to settle down into a permanent thing and if you accept this position with us, it would be a permanent one. I believe that you would like St. Joseph as a place in which to live; you have a great many friends and acquaintances here, all of whom would be very glad to see you back here and in the harness and we believe you could be worth more to us in this position than any other.

"In regard to trips to Washington, beg to say that we have this territory already covered. It might be, however, that during the dull season, we could use you as a special man in that section, but our main object would be to have you work the hotels and streets and help us do a larger house business. We are satisfied that you can get the customers into the house and then we will assume the responsibility of selling them, after you do."

On September 20, 1908, plaintiff answered that in filling such position "it was an eighteen to twenty-four hour a day job for a man who did his duty, that it was hard work, but that he would consider $3600 a year and all expenses and even at $3600 a year with a liberal expense account it would be impossible to save money, because there was every way in the world a man had to spend money in the street job, the position to entertain people to get trade."

Plaintiff could not produce the letter he states he received from Campbell in reply, having lost it. Campbell died before this suit was brought and defendant denies that any such letter was written as plaintiff claims he received. As to the contents of that letter plaintiff testified: "Mr. Campbell wrote that they had been under great expense, and that their building had fallen through and it had cost them lots of money and that it would be a hardship for them to pay $3600 in addition to the other expenses, but that there was not another man in the world that could take the place, and he wanted me to come and would make it a per-

manent place; that at my age, he supposed I wanted to settle for life and that if I came he wanted me to understand that I was to come with the intention of staying as long as I lived and to hunt for no other position, with the understanding that I would work for no other house. I had suggested that in a letter previously, and that, I think brought this suggestion from him at this time—and he further stated that I would never have to look for another one.''

Plaintiff produced the following letter subsequently written by Campbell from New York, under date of October 25th: ''Your letter 17th was forwarded from St. Joseph and reached me here today. I have not yet arranged for a street man, although have one in view. We could not pay over $1800 for first year at least. If you want to come at that salary write me to St. Joseph as I will be back there in about two weeks. We would want you to report for duty Jany. 1st. We would like very much to have you with us and we believe you would be happy.''

After his return to St. Joseph, Campbell wrote plaintiff (November 11, 1908): ''I wrote you from New York on October 25th in answer to your letter of October 17th, but have not had a reply. Please let me know your decision by return mail. We would be mighty glad to have you come with us at $1800, if you cared to accept that salary, but in case you don't then let us know immediately so we can close with other parties who are willing to take the position at that price and some for even less.''

Plaintiff testified that in response to this letter he sent defendant a telegram to the effect that he would ''accept the position under the agreement as per correspondence'' and asking when he should report for duty and followed the telegram with a letter stating that he ''would come and give the Tootle-Campbell Dry Goods Company the balance of my life.'' Neither telegram nor letter was produced. Plaintiff

did produce a letter from Campbell dated November 20, 1908, which said, ''I have your telegram announcing that you will be here in January as per my letter from New York. I am glad you have made this decision. I believe that you will do well for us and that you will be very happy. I want you to come with the intention of staying permanently. You and I have known each other for a good many years and we ought to be able to get along together beautifully. You will find yourself associated with a fine lot of gentlemen and we believe that you can be more settled and contented with us than most anywhere else. I am glad to have had your telegram that you have settled this matter this way.''

In a subsequent letter written in reply to plaintiff's application for a position for his son, Campbell requested plaintiff to report for duty January 1, 1909, but said nothing further on the subject of the terms of plaintiff's employment. Plaintiff arrived in St. Joseph on that date and reported for duty. He states that Campbell, after greeting him, remarked: ''We have a business here, starting a business; we want to perpetuate the Tootle name and Cambpell, and we want you to feel like you are right with us and one of us, and that you are here as long as you live, as long as you can stay on your feet.''

The evidence of plaintiff tends to show that his work was very efficient and entirely satisfactory to Campbell during the first two years of his service and resulted in securing business for defendant amounting to $1,000,000 per year. In 1911, Campbell fell ill and died and was succeeded in the management of the business by his brother who, becoming dissatisfied with plaintiff, discharged him, paying him a month's salary in advance.

The cause for the dismissal, given in the evidence of defendant, is that plaintiff spent too much money in the entertainment of customers and had fallen into

vicious and immoral habits and practices. This is denied by plaintiff, whose evidence tends to show that his expense account was reasonable, that he did not depart from usual custom in the entertainment of customers and was as correct in his own conduct as the duties of his work would permit.

Many objections to the rulings of the court on the instructions and in the admission or rejection of evidence are argued in the brief of plaintiff but in the view we have of the case the evidence of plaintiff disproves the cause of action pleaded in his petition and since the court should have peremptorily instructed the jury to return a verdict for defendant, and none of the alleged errors relating to the admission of evidence, if corrected, could have the effect of making out a case to go to the jury, it will not be necessary to discuss any of the assigned errors.

The evidence of plaintiff tending to show that his dismissal was without good cause is substantial and we must treat that fact as proved in our consideration of the question of whether or not the pleaded cause is supported by any substantial evidence. The gravamen of the alleged cause is the breach by defendant of a contract employing plaintiff for and during his natural life. The words "permanent and lasting employment" read in the light of their context clearly express the intention of the pleader to allege an employment for life. An employment of that nature was the issue tendered by the petition and it devolved upon plaintiff to prove, not only that his employment was to be for a definite and not an indefinite period, but also that it was to be permanent and lasting in the sense that it would continue as long as he lived and was able to perform the duties of his service.

A party cannot sue on one contract and recover on another. [Taylor v. Sebastian, 158 Mo. App. 147; Whitelock v. Beach, 174 Mo. App. 428; Koons v. Car Co., 203 Mo. 227; Kellerman Contracting Co. v. Wreck-

ing Co., 137 Mo. App. 392; Clements v. Yeates, 69 Mo. 623; Cement Co. v. Ullmann, 159 Mo. App. 235.] And plaintiff's burden would not be discharged by proof either of an indefinite hiring or of a definite hiring for a year or for any shorter period than during his life. The contract being in writing, i. e., in the correspondence between the parties, its terms must be ascertained from that correspondence alone.

Turning to the letters written by the manager and produced at the trial, we find no stronger expression in them relating to the terms of the service than the statement "I suppose at your age, you want to settle down into a permanent thing and if you accept this position with us it would be a permanent one." This was said in one of the early letters, but in the subsequent correspondence the letters of the manager took on a less persuasive and more peremptory tone. The last letter preceding plaintiff's acceptance, being couched in language which contained no suggestion of a definite employment, offered nothing more than employment at the rate of $1800 per year, and strongly intimated that the offer would be withdrawn if not accepted immediately. "Please let me know your decision by return mail," said the manager. "We would be mighty glad to have you come with us at $1800, if you cared to accept that salary, but in case you don't, then let us know immediately, so we can close with other parties who are willing to take the position at that price and some even for less." No contract for a hiring for a definite period could have been inferred from an unconditional acceptance of the terms stated in that letter, but plaintiff asserts that in his answering telegram and letter he accepted the offer of defendant as made in the former letters in which it was said that if plaintiff came the writer wanted it understood that he was to come with the intention of staying as long as he lived, that the position would be

permanent, and that he need not expect that he would ever have to look for other employment.

In thus attempting to incorporate into the contract such alleged expressions culled from the earlier letters of Campbell, plaintiff is met with an apparent contradiction in the letter Campbell wrote in answer to his telegram of acceptance, which began with the statement: ''I have your telegram announcing that you will be here in January as per my letter from New York,'' and contains no other reference to the term of employment than the statement, ''I want you to come with the intention of staying permanently.'' Campbell's letter from New York, by its terms, contained an offer for an indefinite hiring, and, if plaintiff's telegram of acceptance was conditioned it was not so understood by Campbell who spoke of it in his answer as an unconditional acceptance of the terms proposed in the New York letter. Plaintiff offered no objection to that construction of his acceptance but accepted it as final and is in no position to claim greater rights than those accorded him in Campbell's letter in answer to his telegram.

The writer is of the opinion that the contract should be held to consist of the New York letter which offered indefinite employment, plaintiff's acceptance of that offer, and Campbell's letter in reply which, as stated, spoke of the employment as permanent. But if we should take plaintiff in the position of his own choosing, it would not alter our interpretation of the contract. Concede that the terms of the agreement should be gleaned from all the correspondence and that the New York letter should not be construed as withdrawing any promise or statement of Campbell made in his former letters, we find that all the statements plaintiff claims were made with reference to the duration of the employment fall short of constituting an offer of hiring for a definite term. The expressions ''I want you to come with the intention of

staying permanently," in the last letter, and "I want you to come with the intention of staying as long as you live," and "to hunt for no other position" and "to work for no other house," mean substantially the same thing, i. e., that the hiring is intended to be for an indefinite and not a temporary period and will continue as long as the parties are satisfied with each other and desire to continue their relationship.

The question of whether a hiring was for a definite or an indefinite time is always to be solved by ascertaining the intention of the parties as expressed in their contract. [Davis v. Insurance Company, decided by this court, not yet reported.] If the employment be for a definite period the employer cannot discharge the employee at will and before the end of the agreed term without becoming liable to the employee as for a breach of contract, but if it be for an indefinite period either party may end it at will upon reasonable notice without incurring any liability to the other. The term "permanent position" and kindred expressions in contracts of employment, as a rule, are intended to mean no more than indefinite employment. "As a general rule the word 'permanent,' as applied to an employment, will be regarded as meaning nothing more than that an employee is to hold the position until one or the other of the contracting parties shall desire to terminate the connection; in which event the dissatisfied party is to have the right to be relieved of further obligations to the other, upon fair and equitable terms, and after reasonable notice. Such a term is not to be understood in the sense that the parties are to be bound together by ties which can be dissolved only by mutual consent or for sufficient reasons." [Labatt's Master & Servant, sec. 175; 6 Words & Phrases, p. 5311.] This rule is not without exceptions and in defining the term "permanent employment" it has been deemed expedient and proper "to consider the circumstances surrounding the making of

the contract, its subject, the situation of the parties and the sense in which, taking these things into account, the words would be commonly understood. For it fairly may be. assumed that the parties·used and understood them in that sense.'' [Carnig v. Carr, 167 Mass. l. c. 547, 46 N. E. 117.] This was said in a case where the employee gave a consideration for the hiring in addition to his undertaking to perform the duties of the service for which he was hired. In such exceptional class of employment contracts the term ''permanent'' generally should be understood as expressing the mutual intention that the hiring shall be for a definite time. Such was the view we entertained in Harrington v. Railway, 60 Mo. App. 223, where a servant injured by the negligence of his master released his claim for damages, partly on the consideration of the master's promise to give him permanent employment or, as stated, in the language of the agreement ''for as long a period as plaintiff should properly do the work so assigned him.'' We held that the additional consideration of the release of a valuable cause of action bespoke a mutual intention that as long as plaintiff properly performed the service he should continue therein during his natural life and that such hiring was not indefinite or uncertain, since that is certain in law which depends upon a certain event.

But we recognized the·general rule that a hiring for an indefinite time is a contract determinable at the will of either party and said that ''such might be the construction of a contract for steady and constant (or·permanent) employment, where the sole consideration for the employment was the services rendered during the current time of the employment.''

The reported cases which deal with contracts of employment in commercial business, where no other consideration than a promise to perform the service passes from the employee to the employer, are almost unanimous in applying the general rule that the words

permanent, lasting, constant, or steady, applied to the term of employment do not constitute a contract of employment for life, or for any definite period, and such contracts fall under the rule ''that an indefinite hiring at so much per day, or per month, or per year, is a hiring at will and may be terminated by either party at any time, and no action can be sustained in such case for a wrongful discharge.'' [Brookfield v. Drury College, 139 Mo. App. l. c. 365.]

The rule of reason should be applied in all its fullness in cases of this character. The success of a large mercantile business depends so largely upon the building up and maintenance of a highly efficient and harmonious organization that it is hard to believe an experienced merchant would bind himself to give a servant employment for life with no other consideration on the servant's part than his promise to serve. The general rule that the assurance of permanent employment will be construed as meaning an indefinite, as distinguished from a special, or merely temporary employment, is a common sense inference founded upon common knowledge of the customs and usages of business. The effort of plaintiff to show an additional consideration passing from him to defendant was abortive since it shows that he merely abandoned other activities and interests to enter into the service of defendant—a thing almost every desirable servant does upon entering a new service, but which, of course, cannot be regarded as constituting any additional consideration to the master. The hiring of plaintiff being clearly shown to have been for an indefinite time, the court should have directed a verdict for defendant. The judgment, being for the right party, is affirmed. All concur.