## 11295

### GANTT v. SOUTHERN RAILWAY CO.

#### (118 S. E., 920)

MASTER AND SERVANT—IN ACTION FOR WRONGFUL DISCHARGE, EVIDENCE REQUIRED NONSUIT.—In an action for wrongful discharge by one employed as an extra brakeman on a railroad, evidence failing to show any term of employment *held* to require a nonsuit.

Before WHALEY, J., County Court, Richland, 1923. Reversed.

Action by James Gantt against Southern Railway Co. Judgment for plaintiff and defendant appeals.

For former appeal see 120 S. C., 235; 113 S. E., 79.

*Messrs. Frank G. Tompkins* and *Barnett & McDonald*, for appellant, cite: *Contract fixes usage in dealing with employees:* 124 A. S. R. 60. *Contract as to wages is not contract with individual employer:* 45 L. R. A. (N. S.), 184. *Where there is no agreement to serve for any length of time, employer may discharge at will:* 45 L. R. A. (N. S.), 184; 51 L. R. A. (N. S.), 629; 99 Ky., 427; 39 L. R.

A., 467; 141 U. S., 627; 168 Fed., 500; 227 Fed., 372; 183 N. Y. S., 195; 89 N. W., 368; 64 S. E., 763. *Plaintiff employed before contract and not entitled to benefits:* 62 L. R. A., 922. *Measure of damages:* 66 S. C., 135.

*Messrs. Graydon & Graydon,* cite: 188 Ky., 834.

September 17, 1923.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The case contains the following:

"This action was commenced in December, 1921, by the plaintiff against defendant, the plaintiff claiming $1,500 in that he was discharged without cause and without an investigation in accordance with the provisions of a certain agreement between the heads of certain unions and the defendant. The defendant interposed a general denial. There was a former appeal in the same case. *Gantt v. Southern Railway Co.* (S. C.), 113 S. E., 79. Upon the second trial of the case the jury returned a verdict for plaintiff in the sum of $165."

"The particular provision upon which plaintiff based his cause of action is article 31, of the pamphlet entitled 'Schedule of Wages, Rules and Regulations,' reading as follows:

" 'INVESTIGATIONS AND DISCIPLINE

" 'Conductors, flagmen, baggagemen, brakemen, switch tenders and porters will not be discharged or demerited without an investigation, which will be made by proper officer within five days, if possible, and in their presence. They will have the privilege of bringing to the investigation to assist them a conductor, flagman, baggageman, brakeman, switch tender, or porter, as the case may be, of their own selection, provided such person is employed and is in good standing on the division. If found blameless, they will be paid for time lost. If discharged, they will be furnished with a letter, showing cause of dismissal, term of service

and the capacity in which employed. If demerited they will be furnished with a written notice of same.'

: "Various exceptions were taken to the failure of the trial Court to order a nonsuit or direct a verdict and to the charge to the jury.

"This action was started on the 17th day of December, 1921, by the service of a summons and complaint and within the time allowed by law defendant duly answered the same with a general denial. The case came on for a trial before Hon. M. S. Whaley, County Judge, and a jury, and resulted in a verdict in favor of the plaintiff, on the 13th day of February, 1922, for $700." (This refers to the first trial.)

"The complaint, omitting title, was as follows:

" '(1) That the defendant is a corporation duly chartered under the laws of the State of Virginia, and is engaged in the general railroad business in this state and county.

" '(2) That at the times hereinafter mentioned said railroad company was being operated under the rules and regulations made by the United States Railroad Administration with said Southern Railway, executed February 28, 1920, in accordance with the terms of the Settlement Award of the Committee of the Council of National Defense made in New York under date of March 19, 1917, and decisions handed down by the Commission of Eight subsequent to the latter date.

" '(3) That the plaintiff, James Gantt, is a resident and citizen of this county and state, and was working as a brakeman on July 20, 1921, and had been for some time previous thereto.

" '(4) That under said agreement, above referred to, the said James Gantt was drawing wages at the rate of $4.88 for an eight-hour day and was averaging four hours overtime at 91 cents an hour every day.

" '(5) That on the 20th day of July, 1921, while working under said agreement near Branchville, S. C., there was

an accident to the train on which the plaintiff was working.

" '(6) That thereafter, to wit, on July 25, 1921, Superintendent W. D. Post, of Columbia, S. C., without giving the plaintiff any investigation whatsoever as provided by article 31 of the agreement above referred to, discharged this plaintiff from the service of said railway company, in violation of the terms of said article 31 of said agreement, the said agreement having been for the benefit of the employees of said company, among them being this plaintiff.

" '(7) That according to the terms of said agreement this plaintiff could not be discharged without an investigation and without paying him for his lost time, in case he was unjustly discharged, but nevertheless the said W. D. Post, superintendent of this division of the Southern Railway Company and acting for said company, discharged said plaintiff without cause, and failed and refused to furnish this plaintiff with any charges, and failed to comply with article 31.

" '(8) That by reason of said breach of contract this plaintiff has lost the sum of $1,500 wages, which he would have earned if he had not been discharged, and which he is entitled to recover under the terms of said contract.

" 'Wherefore the plaintiff demands judgment against the defendant in the sum of $1,500, and for the costs of this action.'

"Answer:

" 'Denies each and every allegation of the complaint.'

"Testimony:

"Direct examination:

"James Gantt, colored, plaintiff, testified:

" 'On the 20th of July, 1921, I was working for the Southern Railroad as brakeman at Blackville, South Carolina. I had been in the employ of the Southern as a brakeman for approximately three years, and at the time I was discharged was making, at the least calculation, $9 a day, including overtime. My wages for an eight-hour day were

$4.88 with time and one-half for overtime. At Blackville we had an accident to train No. 582, on which I was brakeman, occasioned by our train backing out of the Y into another train that was backing out of the other leg of the Y. The accident happened at night about 2 o'clock in the morning. It was not my fault that the collision occurred. I had followed the conductor to the office instead of staying with the train as he had ordered me to do it, and the rules required me to obey him. As soon as our train started back, I signed it down, but it ran into the other train. After the accident, the next morning Trainmaster Williamson sent me and the other brakeman, Henry Govan, into Columbia. On the morning following I went to Superintendent Post's office and the caller at the Union Station said that there was a letter in the mail box for me, and I went back and got the letter and put it in my pocket. I went to see Mr. Post and he told me that I was on train No. 582 on the 20th of July and he said: "I don't need you any more." I asked him to let me make a statement, but he told me that he did not have time to listen to me. The letter was as follows:

" ' "Columbia, South Carolina, July 25, 1922.

" ' "James Gantt, Colored, Brakeman, Columbia, South Carolina: For your responsibility in connection with accident at Blackville, July 20th, when extra 582, watermelon pickup, sideswiped extra 657, you are dismissed from the service.

" ' "[Signed] W. D. Post, Superintendent."

" 'After that I tried to get reinstated by different officers, but did not succeed. This pamphlet (indicating) contains a schedule of wages, rules, and regulations under which we were working.

" 'Q. What is this (indicating book of scedule of wages and rules and regulations)? A. That is a schedule of wages and rules—the regulations under which we were working.

" 'Q. Did you have a copy of this book—did you get one of these books? A. Yes, sir.

" 'Q. Where did you get that book? A. From the superintendent's office.

" 'Q. How did you happen to get that book? A. They had up a bulletin to come to the office and get the new scale of wages and all about the regulations.

" 'Q. They had up that bulletin, and in response you went to the superintendent's office to get one, and you got a copy of the book? A. Yes, sir.

" 'Mr. McDonald objects to introduction of pamphlet on the ground that it shows upon its face that it is made between the unions and the railroad, and there is no testimony that plaintiff is a member of the union, and upon the further ground that contract shows that it was executed on February 28, 1920, and the testimony of plaintiff shows that he had been in the employ of the railroad prior to that time and that, therefore, there was no consideration by the railroad to include him within the terms of the contract. Objection overruled, and pamphlet admitted in evidence.'

"Cross-examination:

" 'I don't know whose fault it was that the wreck happened, but will say that it was not mine. The reason I did not sue at rate of $9 a day is because I didn't suppose that I would make that all the time, but since I have been on the railroad I have been averaging at least four hours overtime. I did not claim $9 a day in the complaint. I said I had been making that for the last three days.

" 'Q. Weren't you what is known as an extra brakeman? A. Well, you might call me that sometimes—I was a regular brakeman at that time.

" 'Q. You were what is known as an extra brakeman? A. Part of the time I was extra and part of the time I was on a regular run, and when you are cut off, you have to wait until you get to run somewhere else. A regular brakeman is on an assigned run, but an extra brakeman runs

whenever his seniority calls for him. He might go to Savannah one week, Spartanburg the next, and some other place the next. At that time watermelon season was on, and I was making more than a regular brakeman. I do not know when the watermelon season is over. I have never been on a watermelon train as late as December. If Mr. Post took me in the office and in the presence of Bowlan asked me questions about the wreck and Mr. Bowlan took it down in shorthand, I do not remember it. I deny that absolutely. Mr. Post would not let me make a statement.

" 'Q. How long were you hired for? A. I was hired for all the time.

" 'Q. The rest of your life? A. That is, they did not specify any time. I was hired as an extra brakeman. Colored brakeman and white brakeman are paid at the same rate if they do the same work.'

"Hart Dickson, witness for plaintiff, testified:

"That he was a fireman on extra 582 at the time of the accident at Blackville, and explained how the accident happened.

"The defendant moved for a nonsuit at the close of the plaintiff's testimony on several grounds, only one of which need be considered, as, in the view this Court takes of this matter, the others become academic.

"The fourth ground of a nonsuit reads:

" '(4) That the testimony in the case is that the contract was an indefinite contract of hire; there was nothing definite said as to how long he would remain in the employ of the railroad, or when he could be discharged; that that makes a hiring at will and that either party may terminate at any time, with or without cause."

There is no evidence to show any term of employment. There was no evidence to show that there was any need for the employment of an extra brakeman, or that under the seniority rule the plaintiff was entitled to be called upon to

do the extra work, if there was any. There was no testimony to show any actionable wrong, nor any basis upon which damages might have been assessed. The motion for a nonsuit should have been granted.

The judgment is reversed.

MESSRS. JUSTICES WATTS, COTHRAN and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.