13056

MARSHALL v. CHARLESTON & W. C. RY. CO.
STUART v. CHARLESTON & W. C. RY. CO.

(162 S. E., 848)

284

*Messrs. George Warren, T. M. Boulware* and *Randolph Murdaugh,* for appellants,

*Messrs. J. W. Manuel, J. E. Harley* and *Park, McDonald & Todd,* for respondent,

June 10, 1931.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE C. T. GRAYDON.

There are two cases involved in this appeal, one on the part of G. Walter Marshall as plaintiff and the other on the part of Henry R. Stuart as plaintiff, both being against the Charleston & Western Railway Company as defendant and both involving identical points, except in the *Stuart case* there is an additional exception which will be disposed of hereinafter.

The cases were commenced in February, 1928, and were tried together by agreement before Circuit Judge Grimball and a jury in the fall term of the Court of Common Pleas for Hampton County, 1928. In each case Judge Grimball directed a verdict for the defendant, and after entry of judgment on each of the verdicts, due notice of intention to appeal was given by the plaintiffs. .

The actions were for alleged breach of a contract of employment.

The material allegations of the complaint in the *Marshall case,* which are practically identical in the *Stuart case,* are that the plaintiff had been in the employ of the defendant and its predecessors for approximately thirty-eight years and until the 29th of December, 1927. The plaintiff further alleged that it was agreed, contracted, and understood by and between the plaintiff and the defendant and its predecessors, which was ratified from time to time by the defendant, that the plaintiff was entering upon his life work and was to give all of his time, energy, and effort to the railroad business; was to have certain rights of seniority; was to have certain

advancements from time to time as to both wages and salary. This contract he alleged was to remain in effect as long as he complied with all of the rules and regulations of the defendant and so long as he was not guilty of any offense which would justify his discharge. The complaint then alleges an agreement between A. W. Anderson, vice-president of the defendant, on the one part, and the order of rail conductors through S. F. Tedders, its general chairman, and a committee acting with him, on the other part, which agreement provided among other things that conductors could not be disciplined without an investigation and provides for the terms upon which such investigation would be had. The complaint further alleges that the plaintiff had been making approximately $225.00 a month; that he was now fifty-seven years old and had given up his entire life work, performing efficient service for the defendant and that he is skilled in no other calling, which is well known to the defendant; that on the 29th of December, 1927, the defendant willfully, maliciously, fraudulently, recklessly, and negligently, and in complete disregard of the contracts and agreements existing between the plaintiff and the defendant and the order of railroad conductors of the defendant and in utter disregard of the rights of the plaintiff, dismissed the plaintiff without a hearing, without notice and without cause or excuse, without an investigation as required under the terms of said contract; that he was dismissed for permitting his negro porter to collect tickets and cash fares on his train, which was not a just cause. He further alleged that it was a custom well recognized by the defendant that negro porters were allowed to perform such services on behalf of the conductors, which custom had been ratified by the officers of the defendant company; that under the mortuary table the plaintiff's expectancy was 10.05 years and asks damages in the sum of $100,000.00. The answer admitted the formal allegations of the complaint and denied the material allegations of the complaint; admitted the discharge for the cause alleged in the

complaint; denied that the cause was insufficient or that the custom had been ratified by the defendant or its officers; and pleaded further the Statute of Frauds and Perjuries; that no memorandum or note of the contract existed in writing signed by the party to be charged or some person thereunto by him lawfully authorized; and that the action could not be maintained on the alleged verbal contract which was not to be performed within the space of one year from the making thereof.

It was upon these issues that the case was tried, and at the conclusion of the introduction of evidence therein the defendant made a motion for a directed verdict on several grounds. The presiding Judge ruled that there was no contract proven binding upon both parties and, therefore, under the decisions and authorities, a directed verdict was proper.

In due time the plaintiffs gave notice of intention to appeal upon three exceptions on behalf of Marshall and an additional exception on behalf of Stuart. The first exception alleges error on the part of his Honor in directing a verdict in favor of the defendant on the ground that the plaintiff had failed to prove any contract binding upon both parties, and the second and third exceptions are reiterations of the first ground in substance. The additional exception on the part of Stuart is that there was a binding and valid contract for permanent employment which was a part of the consideration for the release signed, in the year 1925, by Stuart releasing the defendant from liability for personal injury in consideration that he would be employed by the railroad company permanently as alleged in the complaint.

The case of *Gantt v. Southern Railway,* 125 S. C., 518, 118 S. E., 920, 921, involves the construction of a similar contract and, unless this Court is prepared to overrule the *Gantt case,* the Circuit Judge was right in directing a verdict on the grounds stated.

The exact question here under consideration was considered in the *Gantt case.* There are a few minor points of

distinction, however, to which attention might be called between the two cases. But in the *Gantt case* the contract was admittedly a similar contract to the one involved here. The identical stipulation which is here invoked by the plaintiff was there invoked by the plaintiff, to wit, the section on investigation and discipline. The only distinction between the two contracts is that in the *Gantt case* it was Article 31 of the pamphlet under Schedules of Wages, Rules, and Regulations and refers not only to conductors but also to flagmen, baggagemen, brakemen, switch tenders, and porters, whereas in this case it refers to conductors only. The Court, in disposing of this matter in the *Gantt case,* uses the following language, Mr. Justice Fraser speaking, and concurred in by all members of the Court : *"There is no evidence to show any term of employment.* There was no evidence to show that there was any need for the employment of an extra brakeman, or that under the seniority rule the plaintiff was entitled to be called upon to do the extra work, if there was any. There was no testimony to show any actionable wrong, nor any basis upon which damages might have been assessed. The motion for a nonsuit should have been granted." ( Italics ours.) In the *Gantt case* the plaintiff testified that he was hired for all time. This statement is as strong a statement as any of the statements made in the case at bar.

Under the *Gantt case,* therefore, the plaintiff had no contract for a definite term of employment, the breach of which would entitle him to any action against the defendant.

The plaintiff Stuart raises an additional exception in which he contends that on account of a certain injury which he suffered in the employ of defendant in 1925 he released the railroad from liability for this personal injury, and he was in turn to be kept in the employ of the railroad permanently as one of the considerations of said release. Nowhere in the record does a copy of the release appear, and the testimony of Stuart is indefinite as to the terms and conditions under which said release was signed. There

is not sufficient testimony to warrant the basing of Stuart's cause of action upon this alleged release. It was a contract for employment extending beyond a year and, therefore, came within the Statute of Frauds (Civ. Code 1922, § 5516), and some memorandum in writing, signed by the party to be charged, should have been introduced in evidence to substantiate such claim. The defendant pleaded the Statute of Frauds, and it was incumbent upon the plaintiff to show that such memorandum did exist upon which to base his claim. There is no doubt that if in the releasing of the railroad from liability for personal injuries the railroad had agreed to give the plaintiff permanent employment the consideration would have been good and binding on both parties, but that is not the question here involved.

The rights of seniority for faithful service must not be confused with the so-called "bonus cases," where a person who performs certain services is to receive a bonus. Of course, when the services are performed the person performing them is absolutely entitled to the bonus which is already earned. Under our view of the case there is no necessity of going into the other points raised by the exceptions as the Circuit Judge was correct in directing a verdict on the grounds stated in open Court.

The judgment of this Court is that the judgment of the lower Court be affirmed.

Messrs. Justices Blease and Stabler concur.

Mr. Justice Cothran concurs in result.

Mr. Justice Carter dissents.

Mr. Justice Cothran (concurring in result) : These two cases, commenced in February, 1928, were tried together by agreement, at the fall term, 1929, before his Honor, Judge Grimball, and a jury. He directed a verdict in each case in favor of the defendant. From the judgments entered thereon the plaintiffs respectively have appealed. The appeals were heard together in this Court and will be so considered.

The appeals involve identical issues, except that the plaintiff Stuart raises a point that is not raised in the case of Marshall; what shall be said in reference to the Marshall appeal will apply to the Stuart appeal as well; a separate treatment of the additional point raised by Stuart will appear.

The action by Marshall (as is also that by Stuart), is for damages on account of his alleged wrongful discharge from the service of the defendant as a conductor. The ground of his complaint is that he was discharged without just cause or excuse, and in violation of the provisions of an agreement entered into between the company and the labor union, known as the Order of Railway Conductors, which guaranteed to a member, before his discharge, an investigation of the grounds of complaint against him.

From the testimony on behalf of the plaintiff, which for the purposes of this appeal (from an order directing a verdict in favor of the defendant), is to be taken as true, the following facts appear:

The plaintiff had been in the service of the defendant and its predecessors for about 38 years; his term of service was indefinite; as he testified, "as long as you were giving satisfaction, and as long as you attended to your business and had not done anything wrong, or criminally wrong, to be discharged for"; the service of course was accompanied by the opportunity of promotion and seniority. On December 29th (30th), he was notified to appear at the office of the superintendent; he obeyed the summons and was notified that he was charged with allowing his negro porter to collect fares from colored passengers, in the coaches provided for that race; he admitted that he had done so, and had been doing so for many years; he was immediately discharged by the superintendent, and failed, after many efforts with other executive officers and with certain officials of the order, to be reinstated. There was evidence tending to show that certain officials of the company knew of the practice which pre-

vailed, and under circumstances, of allowing and directing the porter to collect fares from colored passengers. The plaintiff also offered evidence of the damage suffered by him in consequence of what he conceived to be a wrongful discharge.

There was introduced on behalf of the plaintiff a written agreement, styled "Revised schedule of wages, rules and regulations for conductors," between the Order of Railway Conductors and the defendant company, effective February 1, 1927, which contained the following stipulation: "Conductors will not be disciplined without an investigation, which will be made by the proper officer within five days, if practicable, and in their presence; they will have the privilege of bringing to the investigation to assist them a conductor of their own selection, provided he is employed and in good standing on the division. If found blameless they will be paid for time lost; if discharged, they will be furnished with a letter showing cause of dismissal, term of service and capacity in which employed. If disciplined, they will be furnished with a written notice of same; and they will be given a copy of the proceedings of the investigation, if requested."

Upon his discharge he was furnished with a statement in writing, by the superintendent, of the cause of his dismissal.

At the close of the testimony the defendant moved for a directed verdict in its favor upon the following grounds:

"1. That there is no testimony tending to establish the alleged contract as set out in the complaint; and that there is no testimony tending to establish any binding legal enforceable contract of employment.

"2. The testimony shows that the alleged contract is indefinite as to the time of service, and lacking in mutuality, and that it is not claimed that it was binding at all on the employees and they could quit at any time they chose, and that it is an indefinite contract, and such contract can be waived by either party.

"3. The pamphlets introduced in evidence entitled, Re-

vised Schedule of Wages, Rules and Regulations for Conductors, effective February 1st, 1927, does not contain a contract between the individual members of the Order of Railway Conductors and the defendant company; but is as stated Revised Schedule of Wages, Rules and Regulations for Conductors and entered into in pursuance of the Labor Act of Congress of 1926, which requires all carriers and employees to enter into an agreement similar to the agreement in question. That if it be said he had a contract as indefinite and lacking mutuality and that the Labor Act states that the Labor Union cannot bind employees to work against their consent, and, therefore, under the terms of the Labor Act there is no enforceable contract in this case.

"4. Under and by virtue of the Labor Act of Congress, 1926, carriers and employees are required to enter into agreement, provided for the settlement of disputes and grievances; and providing for appeal to this other board, and by the testimony it had been done in this case, and the Rules and Regulations and Pamphlets are not binding on the employees, and his exclusive remedy, and having no stand in this Court for a breach of alleged contract in this case."

His Honor, the presiding Judge, ruled as follows: "Well, gentlemen, I guess I have got to the cross-roads. I can't see after listening to counsel on both sides very fully that there has been proved any contract binding upon both parties, and, therefore, under the decisions and the authorities in my opinion it is my duty to direct a verdict and grant the motion which I do on the first two grounds."

The conclusion announced in the opinion of Mr. Justice Graydon is based solely upon the principle declared in the case of *Gantt v. R. Co.,* 125 S. C., 518, 118 S. E., 920, in effect, that where the employment is for an indefinite period, each party having the right to terminate it at his pleasure, the employee discharged has no right under the agreement or contract referred to, between the order and the company, to an investigation as provided therein.

For the reasons given in the opinion submitted by me in the case of *Johnson v. Express Company,* 163 S. C., 191, 161 S. E., 473, in process of decision, I do not think that the *Gantt case* should be upheld in this declaration. Ordinarily where there has been such an agreement between the union and the employer, and the employer has refused or failed to accord to the employee the right to an investigation, as provided for, and discharges him, the employee would have the right to treat the action of the employer as a breach of the contract of service, and to maintain an action in damages therefor.

But in the case at bar the plaintiff admitted the charge to the superintendent, and in his testimony reiterates such admission. There was consequently nothing to investigate. The law will not require a vain and useless ceremony; the employee will be deemed to have waived the stipulation for an investigation.

In the case of *Adams v. Southern Pacific Co.,* 204 Cal., 63, 266 P., 541, 543, 57 A. L. R., 1066, Adams, a conductor, was discharged for conduct unbecoming his office. Adams brought suit charging that a rule of the company had been breached providing that no employee could be discharged except upon "an open and fair investigation," which he contended was not done. In disposing of this the Court said: "Respondent urges that a reversal of the judgment will render the rule of the railroad company, under which it cannot discharge an employee except upon an open and fair investigation, a nullity. Answering this contention it is sufficient to say that the law does not require idle acts.   *   *   * As respondent admitted to the officers of the company before his discharge that he had committed the acts enumerated, an open investigation was not required, as it would be idle to investigate charges, the truth of which is admitted by the person charged."

In the case at bar appellants themselves both admitted that they were guilty of permitting their negro porters to collect cash fare—a rule not only of vital importance but one upon

which the very life of the company rests. It will hardly be contended by any reasonable mind that to permit a responsible conductor to delegate to an irresponsible negro porter the highest and most important duty which he has to perform in the service of his master, does not constitute sufficient grounds for dismissal.

It has been suggested that notwithstanding such admission, there was evidence tending to show that the objectionable practice had been continued for years, to the knowledge of certain executive officers of the company, and that fact, with its legal consequences, was a legitimate subject of investigation. Assuming even that the president of the company had knowledge of the practice, I do not think that his authority could bind the company in such a gross breach of the duties of a conductor.

The term of service being indefinite and the plaintiff having waived the protection of the stipulation by his admission, the company had the right of discharge with or without cause.

The appellant contends that he had practically a contract with the company for permanent employment or employment for life. The record does not contain any evidence tending to sustain this contention. Even, however, had the railway company entered into such a contract, the authorities hold with practical unanimity that, in the absence of additional express or implied stipulation as to the duration of the employment or of a good consideration additional to the services contracted to be rendered, a contract for permanent employment, for life employment, for as long as the employee chooses, or for other terms purporting permanent employment, is no more than an indefinite general hiring, terminable at the will of either party. *Lord v. Goldberg,* 81 Cal., 596, 22 P., 1126, 1128, 15 Am. St. Rep., 82; *Shuler v. Corl,* 39 Cal. App., 195, 178 P., 535; *Bentley v. Smith,* 3 Ga. App., 242, 59 S. E., 720, 722; *Speeder Cycle Co. v. Teeter,* 18 Ind. App., 474, 48 N. E., 595; *Faulkner v. Des Moines*

*Drug Co.*, 117 Iowa, 120, 90 N. W., 585; *Perry v. Wheeler,* 12 Bush (Ky.), 541; *Louisville & N. R. Co. v. Offutt,* 99 Ky., 427, 36 S. W., 181, 59 Am. St. Rep., 467; *Yellow Poplar Lumber Co. v. Rule,* 106 Ky., 455, 50 S. W., 685; *Rape v. Mobile & O. R. Co.,* 136 Miss., 38, 100 So., 585, 35 A. L. R., 1422; *Sullivan v. Detroit, Y. & A. A. R. Co.,* 135 Mich., 161, 98 N. W., 756, 64 L. R. A., 673, 106 Am. St. Rep., 403; *Bolles v. Sachs,* 37 Minn., 315, 33 N. W., 862; *Minter v. Tootle, Campbell Dry Goods Co.,* 187 Mo. App., 16, 173 S. W., 4; *Arentz v. Morse, etc., Co.,* 249 N. Y., 439, 164 N. E., 342, 344, 62 A. L. R., 231; *Bird v. J. L. Prescott Co.,* 89 N. J. Law, 591, 99 A., 380; *Milner v. Hill,* 19 Ohio Cir. Ct. R., 663; *McKelvy v. Choctaw Cotton Oil Co.,* 72 Okl., 74, 178 P., 882; *Hickey v. Kiam* (Tex. Civ. App.), 83 S. W., 716.

Thus, in *Bentley v. Smith* (Ga.), *supra,* the Court stated the rule as follows: "A contract for permanent employment has been held to be a contract to continue indefinitely, and terminable at any time by either of the parties."

*Rape v. Mobile & O. R. Co.,* 136 Miss., 38, 100 So., 585, 35 A. L. R., 1422, holds that, where no consideration exists other than the services contracted to be rendered, and nothing appeared in the contract to definitely fix the duration of the contract, a contract for permanent employment is not equivalent to a continuous engagement to endure as long as the employer engages in the business and has work for the employee, or so long as the employee satisfactorily performs the services required, but is in effect merely a contract of general employment terminable at will.

In *Lord v. Goldberg* (Cal.), *supra* it was held that "permanent employment" was an employment for an indefinite term terminable at will. In construing the term "permanent employment," the Court said: "It is clear that plaintiff's employment was not intended to be for life, or for any fixed or certain period. It was to be 'permanent,' but that only meant that it was to continue indefinitely, and until one or the other

of the parties should wish, for some good reason, to sever the relation."

"An agreement to give a person permanent employment means nothing more than that the employment is to continue indefinitely and until one or the other of the parties wishes for some good reason to sever the relation." *Arentz v. Morse Dry Dock Co., supra.*

And similarly, the rule was applied in *McKelvy v. Choctaw Cotton Oil Co.* (Okl.) *supra,* wherein it appeared that the defendant employed the plaintiff as bookkeeper under an agreement that the position would be permanent.

Where a contract of employment provided that the employment should continue until the parties mutually agreed to its termination, the Court held that the duration was indefinite and unenforceable. *Faulkner v. Des Moines Drug Co.,* 117 Iowa,, 120, 90 N. W., 585, 586. The Court said: "A contract for 'permanent' employment is construed to mean nothing more than that the employment is to continue indefinitely, and until one or the other of the parties desires for some good reason to sever the relation."

Such was the view of the Court in *Minter v. Tootle, Campbell Dry Goods Co.,* 187 Mo. App., 16, 173 S. W., 4, 7, wherein the Court discussed the term in the following language: "The term 'permanent position' and kindred expressions in contracts of employment, as a rule, are intended to mean no more than an indefinite employment. 'As a general rule the word "permanent," as applied to an employment, will be regarded as meaning nothing more than that an employee is to hold the position until one or the other of the contracting parties shall desire to terminate the connection; in which event the dissatisfied party is to have the right to be relieved of further obligations to the other, upon fair and equitable terms, and after reasonable notice. Such a term is not to be understood in the sense that the parties are to be bound together by ties which can be dissolved only by mutual consent or for sufficient reasons.' * * * We recog-

nized the general rule that a hiring for an indefinite time is a contract determinable at the will of either party, and said that 'such might be the construction of a contract for steady and constant (or permanent) employment, where the sole consideration for the employment was the services rendered during the current time of the employment.' * * * The general rule that the assurance of permanent employment will be construed as meaning an indefinite, as distinguished from a special, or merely temporary, employment, is a common sense inference founded upon common knowledge of the custom and usages of business."

In *Bolles v. Sachs,* 37 Minn., 315, 33 N. W., 862, 864, the Court, holding that such a contract was indefinite and not effective to entitle an employee to substantial recovery for a breach by the employer, said: "The difficulty * * * is the want of certainty in the contract respecting the period of service. The contract was perhaps effectual to give to the plaintiff the option to himself fix the duration of it; but unless he exercised that election, and actually determined the period so as to make certain that which by the terms of the contract was uncertain, he could recover only for the period of his actual service. He could not recover, as damages for the breach of the contract, the profits or remuneration which the business might have yielded during any period beyond the time when the contract was broken and the employment terminated."

The foregoing is practically an excerpt from 35 A. L. R., 1432, where a very clear annotation on this subject will be found.

In the case of *Rape v. Mobile & Ohio Railroad Co.,* 136 Miss., 38, 100 So., 585, 35 A. L. R., 1422, in which the facts are quite similar in their legal aspects to the case at bar, it was held: "A contract for permanent employment so long as the work is ·satisfactorily performed, which is not supported by any consideration other than the obligation of service to

be performed on the one hand and wages to be paid on the other, is terminable at the pleasure of either party."

In the case just referred to plaintiff was employed by a railway company following a strike. In answer to a specific question before entering the employ of the company as to whether or not the job would be permanent, he was told, "if you go to work you will have a permanent job and you will have seniority over the others." This testimony was corrobated by other witnesses. The Court, in deciding that such a contract was terminable at the will of either party, goes quite fully into the authorities and quotes at length from them in support of this principle.

In the case of *St. Louis, L. M. & S. Rwy. Co. v. Matthews*, 64 Ark., 398, 42 S. W., 902, 39 L. R. A., 467, quite similar to but stronger than the case at bar, the Court held: "Want of mutuality in the contract will permit the discharge *at any time* of a railroad engineer employed under a contract by which the employer agrees to pay him according to specified rates for his services, not *to discharge him without just cause,* to promote him according to specified grades of service, and when discharges of engineers are made to discharge in the order of juniority in service, *where there is no agreement on his part to serve for any specified time."*

The rules and working agreement refer in a number of places to employers "voluntarily leaving" the service, thus showing that an employee could quit at any time he chose.

There can be no controversy, I assume, over the proposition that where the term of service is indefinite and either party may terminate it at will, the employee cannot complain if he be discharged even without cause. *Louisville & N. R. Co. v. Offutt,* 99 Ky., 427, 36 S. W., 181, 59 Am. St. Rep., 467; *St. Louis, I. M. & S. R. Co. v. Matthews,* 64 Ark., 398, 42 S. W., 902, 39 L. R. A., 467; *Moore v. Ins. Co.* (C. C. A.), 168 F., 496, 500; *Wheeler v. Ins. Co.* (C. C. A.), 227 F., 369, 372; *Willcox & Gibbs Sewing Mach. Co. v. Ewing,* 141 U. S., 627, 12 S. Ct., 94, 35 L. Ed., 882; *Sax v. R. Co.,*

129 Mich., 502, 89 N. W., 368; *Resener v. Watts*, 73 W.
Va., 342, 80 S. E., 839, 51 L. R. A. (N. S.), 629; *Currier
v. Lumber Co.*, 150 N. C., 694, 64 S. E., 763, 134 Am. St.
Rep., 955; *Vogel v. Pekoc*, 157 Ill., 339, 42 N. E., 386, 30
L. R. A., 491.

Appellant seems to question the existence of any rule re-
quiring conductors to collect fares. Even if there were no
express rule on the subject, the Court will take judicial no-
tice that the only reason for the operation of passenger trains
by railway companies is for revenue. This being true, the
highest duty resting upon the conductor is scrupulously to
obtain and account for that revenue. Obviously, if this duty
is to be delegated by the conductor to a negro porter, there
would be very little object in employing conductors.

However, there are a number of rules which expressly
cover this point. Rule 831, referring to conductors, provides:
"They will collect proper transportation or cash fare from
each passenger." "Cash fares must be properly accounted
for in accordance with current instructions."

Rule 832 provides: "It is the duty of passenger train con-
ductors to pass entirely through their trains for the collec-
tion of tickets and fares after leaving each station where
their trains stop."

It is difficult to see how any rule could impose this duty in
any more definite language.

The third and fourth grounds of the motion for a directed
verdict, which present the question of the effect of the Rail-
way Labor Act of Congress, 45 U. S. C. A., § 151 *et seq.*,
do not appear to have been passed upon by the presiding
Judge, and not having been urged as additional grounds to
sustain the motion, are not properly before the Court and no
declaration can properly be made in respect thereto.

(Note.—It has been held in several late cases that addi-
tional grounds will not be considered in a law case. I may
say, for myself alone, that I very greatly question the rea-
son or justice of that pronouncement.)

Mr. Justice Graydon has satisfactorily disposed of the additional contention of the plaintiff Stuart.

For these reasons I concur in the result announced in the leading opinion, the affirmance of the judgments appealed from.

MR. JUSTICE CARTER (dissenting) : I am unable to agree with the conclusion reached in the leading opinion in this case, and, therefore dissent. Since an elaborate dissenting opinion would serve no useful purpose, I shall state my views briefly.

As I view the case, there was testimony tending to show that the defendant, for a valuable consideration, obligated and agreed to furnish the plaintiff, in each case, permanent employment as conductor on its trains so long as the defendant needed any one to perform such service, and so long as the plaintiff was able to perform such service satisfactorily, choice of runs being governed by seniority rights; and, further, the plaintiff could not be discharged except for just cause, and even then not until after a fair and impartial investigation, after due notice and an opportunity given to the plaintiff to be heard in the manner prescribed in the rule book, called "Schedule of Wages, Rules and Regulations," which rule book, according to the testimony, constituted, in part, the agreement between the parties and served as a working basis for them. The consideration for the said promise and agreement to furnish to the plaintiff permanent employment, or employment for the life of the plaintiff, according to my view of the testimony, may be stated as follows :

In addition to the services which the plaintiff agreed to perform, the plaintiff gave up all other business, trained and fitted himself especially for the duties devolved upon him as conductor on defendant's trains, and remained in defendant's service in said capacity so long that when discharged he was too old to be trained for holding any other worthwhile position. Also plaintiff was entitled to and the defendant

owed him seniority rights for his continuity of service, and such rights, based on agreement, were very valuable. The defendant paid to the plaintiff wages for his actual labor, but did not pay plaintiff for his continuity of service, which its management must have valued very highly, in order that it might have well-trained conductors of long experience in charge of its trains and a permanent organization (the seniority rule applied to engineers and brakemen, also), and thus be prepared to render efficient service, avoid accidents and costly lawsuits, and handle its trains economically. For this the defendant agreed to give to its employees, including the plaintiff, seniority rights, which rights could only be enjoyed by the plaintiff and be of benefit to him by continuity of service, and without the promise of permanent employment the incentive for continuity of service would have been lacking, and the defendant's permanent and efficient organization could not have been built up. The seniority rule and the agreement to give permanent employment to defendant's employees benefited the defendant as much, if not more, than the employees. Under the seniority rule the oldest conductor in point of continuous service for the defendant has the right to select the best "run," and is the last to be laid off on account of "dull traffic." If he voluntarily leaves the service and is re-employed, he will rank as a new man. Under the seniority rule the defendant is enabled to build up an organization of experienced and well-trained employees of great economical value, without which it could not operate successfully. The seniority right is not a gift or gratuity, but is an offer and promise on the part of the defendant for the purpose of procuring well-trained men willing to perform continuous service. When the plaintiff entered the service of the defendant upon the inducement of the seniority rights promised him by the defendant, as set forth in the book of rules to which we have referred, it amounted to a supplementary contract of which he cannot be deprived, without sufficient cause upon due notice and an oportunity to be

heard. *Roberts v. Mills,* 184 N. C., 406, 114 S. E., 530, 28 A. L. R., 338. The plaintiff has to continue in the service of the defendant to be entitled to such right, and the continued service on the part of the plaintiff is a valuable consideration for the promise the defendant makes the plaintiff, while the plaintiff suffered an inconvenience and loss by devoting his whole time and continued service for the defendant, and failing to train and prepare himself to perform other work so that he could hold other positions when reaching a ripe age. In this connection attention is called to the following cases: *Johnson v. Lawrence,* 88 S. C., 496, 70 S. E., 1025; *Furman v. Waller,* 124 S. C., 68, 117 S. E., 356, 33 A. L. R., 615; *Gee v. Hicks,* Rich. Eq. Cas. 5. This seems to be a reasonable construction to be placed upon the contract between the parties, and the following language, quoted with approval by Mr. Justice Gage from Bishop on Contracts, seems to be applicable here: "From an expressed undertaking, the law will also imply whatever the parties may be reasonably supposed to have meant, and what is essential to render the transaction fair and honest." *Mull v. Touchberry,* 112 S. C., 422, 100 S. E., 152, 153.

One of the rules appearing in the said book of rules reads as follows: "Employees are required to devote their time exclusively to the business of the company." Also the plaintiff agreed to a penalty for voluntarily leaving the service of the company, viz., lose his seniority rights.

I agree with the contention of the appellant that if the above-stated construction of the contract is not correct, then the contract between the parties is ambiguous, and what was the intention of the parties is a question for the jury.

Further, the testimony on the part of the plaintiff tends to show that he was discharged without cause. His testimony was to the effect that he worked in the service of the railroad as conductor continuously for a period of thirty-seven years, during which time he devoted his time exclusively to the railroad, and rendered faithful and continuous service; that

up to the date in question, when he was discharged, he had never caused any complaint and had never been questioned by any of the railroad officials about his service or conduct in any way whatsoever; that on the day in question, December 29, 1927, when he arrived in Augusta, Ga., as conductor on his train on a regular trip, he was handed a notice to appear at once at the office of the officials of the railroad in said city; not knowing what it meant, he went immediately to the said office, and when he entered the office was questioned about permitting the colored porter on his train to assist in collecting fares from the passengers on the coach for colored passengers, and when he answered that he had done this the said officials discharged him from service. According to the further testimony of the plaintiff, he told the said officials that he was forced to do this because of the great amount of work placed on him by the railroad; that because of the heavy travel on a number of occasions, especially in the coach for the colored people, and because of the stations being so close together, he was forced to use the porter to help him, and further this was done with the full knowledge and acquiescence of the officials, which practice had been going on for many years with the full knowledge and consent of the railroad; that the railroad had never objected. The plaintiff also testified that there was no rule against his acts; also, that he was not given an opportunity of defending himself against the charge as required by the rules governing the employees.

In my opinion the case of *Gantt v. Ry.,* 125 S. C., 525, 118 S. E., 920, referred to in the leading opinion, is not controlling in the case at bar. The cases are distinguishable. In the *Gantt case* the plaintiff was an extra brakeman, not a regular employee, and he had accumulated no seniority rights upon a contract. He could not demand work at any time, but could only expect work in the event the railroad happened to need some extra help. Furthermore, the proof seemed to be lacking as to the plaintiff having contracted in reliance upon

the rules in question in the case at bar. There was no proof that there was any need of the employment of an extra brakeman at the time in question in that case, "or that under the seniority rule the plaintiff was entitled to be called upon to do extra work, if there was any," neither was there any evidence to show any term of employment. In the case at bar there is proof tending to establish all of the plaintiff's allegations in each case. It clearly appears from the evidence in the case at bar that the plaintiff was at the top of the service, and under the rule, in dull times, those ranking below should be laid off but not the plaintiff. The proof further shows, in the case at bar, that when the plaintiff was discharged other men ranking below took the place of the plaintiff Marshall, and also the plaintiff Stuart. In each instance where the proof was lacking in the *Gantt case* it is supplied in the case at bar.

According to my view of the testimony the case should have been submitted to the jury. I, therefore, think the judgment should be reversed and the case remanded for a new trial.

## On Rehearing

MR. JUSTICE CARTER: These actions, commenced in the Court of Common Pleas for Hampton County, February, 1928, are for the recovery of damages against the defendant for alleged breach of alleged contracts of employment. Issues being joined, the cases, by agreement, were tried together, at the fall, 1929, term of said Court, before his Honor, Judge William H. Grimball, and a jury, resulting in the direction of a verdict for the defendant in each case, at the close of the testimony offered by plaintiffs and defendants in response to the pleadings. From the judgments entered thereon the plaintiffs appeal to this Court. The appeals were heard together before this Court at the March, 1930, term, and an opinion written by Judge Graydon, Acting Associate Justice, concurred in by the majority of the members of the Court, was filed January 20, 1931, affirming the judg-

ments in the lower Court. Thereafter, upon petition by appellants a rehearing was ordered and the questions raised by the appeal reargued.

Since, under our view, the cases will have to be remanded for a new trial, we shall not discuss the testimony.

The grounds, upon which the defendants' motion for direction of a verdict was made, included, among others, the following:

"1. That there is no testimony tending to establish the alleged contract as set out in the complaint; and that there is no testimony tending to establish any binding legal enforceable contract of employment.

"2. The testimony shows that the alleged contract is indefinite as to the time of service, and lacking in mutuality, and that it is not claimed that it was binding at all on the employees and they could quit at any time they chose, and that it is an indefinite contract, and such contract can be waived by either party."

The verdict was directed upon the grounds quoted. In passing upon the question, the trial Judge made the following ruling: "Well, gentlemen, I guess I have got to the cross-roads. I can't see after listening to counsel on both sides very fully that there has been proved any contract binding upon both parties, and, therefore, under the decisions and the authorities in my opinion, it is my duty to direct a verdict and grant the motion which I do on the first two grounds."

The conclusion announced in the leading opinion filed in the case, following the first hearing, affirming the ruling of the trial Judge and the judgment in the lower Court, was based upon the principle stated in the case of *Gantt v. Ry. Co.*, 125 S. C., 518, 118 S. E., 920, which case was considered and discussed by this Court, in the opinion recently filed in the case of *Johnson v. Express Company*, 163 S. C., 191, 161 S. E., 473, in which case the question presented in the case at bar was involved and decided adversely to the ruling of the trial Judge in the case at bar. In sustaining the appeal, we

deem it sufficient to call attention to the opinion in the *John-son case*. In justice to the trial Judge, we wish to state that the opinion in the *Johnson case* having been filed since the trial of the case at bar, his Honor, of course, knew nothing of the holding of this Court, in that case, when the question was presented before him.

The Court deems it unnecessary to consider the other questions raised by the appeal or suggested by counsel.

The judgment of this Court is that the order and judgment of the lower Court be reversed and the cases remanded for a new trial.

(Note.—The complaint in the *Stuart case* [omitting formal parts] will be incorporated in the report of the case, the allegations in each case being the same, in so far as they are pertinent to the question we have considered.)

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and BONHAM concur.

MR. JUSTICE COTHRAN did not participate on account of illness.

MR. JUSTICE BONHAM (concurring): I concur on the strength of the case of *Johnson v. Express Company*, which has just been decided and which reverses *Gantt v. Railway Company*, upon which the Circuit Judge predicated his opinion, and which was not of force when he rendered his decision.